[S. F. No. 1039.    Department One.—June 14, 1899.]

THEODORE FOX, Appellant, v. JOHN W. MACKAY et al., Respondents.

MINING CORPORATION — ACTION BY STOCKHOLDER — ALLEGED FRAUD IN MILLING OF ORE—QUESTIONABLE FAITH OF PLAINTIFF.—In an action by a stockholder of a mining corporation for an accounting of ores claimed to have been fraudulently milled as the result of an alleged conspiracy between certain stockholders of the mining company, who had organized the milling company, the good faith of the plaintiff in bringing the action is open to question, where it appears that he purchased five shares of the stock, and held it but a single month, for the purpose of bringing the action, while the holders of the remaining two hundred and fifteen thousand nine hundred and ninety-five shares appear to be satisfied with the past management of the corporation, and that the plaintiff also brought five similar actions against other corporations on the same day.

ID.—FINDINGS AND EVIDENCE AGAINST FRAUD.—Findings supported by evidence showing that the contract for the milling of the ore was fair, and that the milling was honestly done, and yielded an average per cent of the pulp assay in excess of that required by the contract, though in certain months of incompleted runs the yield was less, and that none of the stockholders of the mining company who organized the milling company were directors of the former, or participated in or controlled in any manner its action in the making of the contract, are a bar to any recovery by the plaintiff.

ID.—CONCEALMENT OF INTEREST IN MILLING CONTRACT—DUTY OF STOCKHOLDERS.—The stockholders of the mining corporation, merely as such, owed no duty to inform it of their interest in the contract

made with the milling company, and the concealment of such interest is not a fraud *per se* upon the mining company, if its action in making the contract was not controlled by them in any manner.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion.

H. G. Sieberst, for Appellant.

The findings are not sustained by the evidence.

It only needed a slight showing of unfairness to set the contract aside, as being an executory contract, affecting a trust relation. (*State v. Richmond*, 26 N. H. 237, 238; *Guernsey v. Cook*, 120 Mass. 501; *Rhodes v. Forwood*, L. R., 1 App. Cas. 256; *Legard v. Hodges*, 1 Ves. J., 478; *Aberdeen R. R. v. Blakie*, 1 McQueen, 461; Morawetz on Corporations, secs. 518, 519, 525; *Forbes v. McDonald*, 54 Cal. 100; *Wardell v. Union Pac. R. R.*, 103 U. S. 651; *Oakland v. Carpentier*, 13 Cal. 540; *Fox v. Hale & Norcross Co.*, 108 Cal. 385.) The control of the stock of the corporation amounted to a control of the corporation, and a contract effected by persons having such control requires the utmost good faith. (*Rice's Appeal*, 79 Pa. St. 168; *Robinson v. Smith*, 3 Paige, 222; 24 Am. Dec. 212; *Metropolitan etc. Ry. Co. v. Manhattan Ry. Co.*, 14 Abb. N. C. 108. The ratification or acquiescence of the other stockholders could not affect the rights of the plaintiff. (Lewin on Trusts, 371, 372, 660-64; *Ex parte Hughes*, 6 Ves. 222; *Davoue v. Fanning*, 2 John. Ch. 264; *Hoffman Steam etc. Co. v. Cumberland Coal Co.*, 16 Md. 468; 77 Am. Dec. 311; *Hazard v. Durant*, 11 R. I. 207; *Cumberland Coal Co. v. Sherman*, 30 Barb. 575-77.) Equity rule 94, applicable to the equity courts of the United States, does not apply to an action in the courts of this state, and plaintiff's *status* in this court cannot be assailed on account of the smallness of the plaintiff's stock, which cannot prevent a suit in this court to remedy a corporation wrong. (Cook on Stockholders, secs. 735, 736, 743; Civ. Code, sec. 298; *Parsons v. Joseph*, 92 Ala. 403.) Plaintiff represents the corporation. (*Beach v. Cooper*, 72 Cal. 99.)

W. E. F. Deal, and Edmund Tauszky, for Respondents.

The findings are supported by the evidence. There is no trust relation between stockholders and the corporation, or between stockholders. (*Verplanck v. Mercantile Ins. Co.*, 1 Edw. Ch. 84-87; *Johnson v. Kirby*, 65 Cal. 482-88.) There is no legal inference or presumption that owners of a majority of stock dominated the corporation. (*Porter v. Pittsburg etc. Co.*, 120 U. S. 670; *Pullman Car Co. v. Missouri Pac. R. R. Co.*, 115 U. S. 597.) Stockholders have the right to deal with the corporation, in the same manner as strangers. (*Twin Lick Oil Co. v. Marbury*, 91 U. S. 587; 1 Spelling on Private Corporations, sec. 346; *Harts v. Brown*, 77 Ill. 226; *Merrick v. Peru Coal Co.*, 61 Ill. 472; *Culbertson v. Wabash Nav. Co.*, 4 McLean, 544.) Plaintiff having bought five shares of stock for the sole purpose of bringing this suit, he is to be regarded as an interloper. (*Kingman v. Rome etc. R. R. Co.*, 30 Hun, 73; *Robson v. Dodds*, L. R. 8 Eq. Cas. 301; *Hawes v. Oakland*, 104 U. S. 450; *Moyle v. Lander*, 83 Cal. 579; *Dimpfell v. Ohio etc. Ry. Co.*, 110 U. S. 209; *Miller v. Murray*, 17 Colo. 408; *Boyd v. Sims*, 87 Tenn. 771; *Rathbone v. Gas Co.*, 31 W. Va. 798; *Latimer v. Richmond etc. R. R. Co.*, 39 S. C. 44; *Alexander v. Searcey*, 81 Ga. 536; 12 Am. St. Rep. 337; *Moore v. Silver Valley Min. Co.*, 104 N. C. 534; *Dannemeyer v. Coleman*, 11 Fed. Rep. 97.) Plaintiff's motive is a proper subject of inquiry in this case. (*McFadden v. Santa Ana etc. Ry. Co.*, 87 Cal. 464, 470; *Neal v. Neal*, 58 Cal. 288; 1 Greenleaf on Evidence, sec. 446; 2 Spelling on Private Corporations, sec. 662; *Belmont v. Erie Ry. Co.*, 52 Barb. 637; *Waterbury v. Merchants etc. Co.*, 50 Barb. 157, 168; *Robson v. Dodds*, L. R. 8 Eq. 301; *Tfooks v. Southwestern Ry. Co.*, 1 S. & G. 142; *Forrest v. Manchester etc. Ry. Co.*, 4 De Gex. F. & J. 126.)

GAROUTTE, J.—Plaintiff brings this action as a dissatisfied stockholder and on behalf of the Consolidated California & Virginia Mining Company, which corporation is made a party defendant. The defendant, the Comstock Mill and Mining Company, was never served with process and is not interested in the litigation. John W. Mackay and John P. Jones are the real parties defendant. The corporation represented in this litiga-

tion by plaintiff has two hundred and sixteen thousand shares. Plaintiff is the owner of five shares of this stock.

By the bill a conspiracy is charged against Mackay and Flood to defraud the Consolidated California & Virginia Mining Company. It is claimed that at all times prior to Flood's death he and Mackay controlled this mining corporation, and that subsequent to Flood's death Mackay alone controlled it. That upon December 23, 1885, the mining company entered into a three years' contract with J. P. Jones for the milling of its ores; that this contract was entered into by the connivance and procurement of Mackay, Flood, and Jones; that Mackay and Flood were interested with Jones in the profits of the contract, and also controlled the directors of the mining company, and that the contract was greatly to the disadvantage and loss of the mining company; and that by Jones' contract he agreed to transport the ore from the dump to the mill, and mill the same for six dollars per ton, returning to the mining company at least seventy per cent of the pulp assay. It is next alleged that upon January 8, 1886, the Comstock Mill and Mining Company was organized by Jones, Mackay, and Flood, and that this milling contract was thereupon assigned to said milling company. It is further charged that upon December 24, 1886, this milling contract was modified and changed at the instigation of Mackay, Flood, and Jones, to the great loss of the mining company. It is further alleged that forty-one thousand tons of ore were milled, and less than seventy per cent of the pulp assay returned upon such ore. By the bill, reduced to its lowest terms, it is claimed that Mackay and Flood are the moving, controlling parties in both corporations, and by the contract of milling and the unskillful and careless manner of milling, and by violations of the contract of milling, they defrauded the mining company out of immense sums of money. After the introduction of evidence upon issue joined, findings of fact were made by the trial court. These findings of fact are strong against the allegations of the bill, and, unless overthrown, stand as a stone wall, forever barring a recovery by the plaintiff. Realizing these conditions, plaintiff has assaulted the findings as without support in the evidence. A few errors of law in the admission and rejection of evidence are relied upon by plaintiff, but we find them of such minor importance as not to demand consideration.

Defendants also urge certain grounds as fatal to plaintiff's cause of action. It is claimed that plaintiff was not a stockholder upon the books of the mining corporation at the times these various frauds are alleged to have been committed. It is said that the record discloses plaintiff to be a mere speculator and professional litigant, making this class of litigation a specialty, and that he purchased these five shares of stock of the corporation for the sole purpose of giving him a status as a party plaintiff, and that, therefore, he has come into a court of equity with bad motives. It is urged that plaintiff made no demand upon the corporation to bring the action. Laches is also relied upon, and likewise ratification by the stockholders is claimed. Although some of these defenses present interesting legal propositions, we pass them by with little discussion in view of the conclusion just arrived at after an examination of the evidence and findings of fact.

The record largely justifies the claim of defendants as to the somewhat equivocal position plaintiff occupies in this case. It is not entirely plain that he is one of those dissatisfied stockholders whom the law had in mind when it authorized such a one to inaugurate this character of litigation. Plaintiff's good faith in bringing the action is to some extent an open question. It is not conclusively shown that the best interests of the corporation were the moving factors in his mind in prosecuting this suit. These statements are justified when we consider that plaintiff as the holder of five shares of stock of the corporation stands alone; for, as far as we may be allowed to see, the holders of the remaining two hundred and fifteen thousand nine hundred and ninety-five shares are entirely satisfied with the corporation's past business management. They are fairly justified, in view of the fact that plaintiff held this particular five shares of stock but for a single month, and purchased them for the purpose of giving him a standing as plaintiff in this action. And also in view of the further fact that he brought five other actions of the same character against five other mining corporations upon the day this complaint was filed.

The findings are full and complete and cover every substantial allegation of the bill. We see no good purpose to be subserved by setting forth in this opinion a detailed recital of the

evidence which tends to support these findings, but might well content ourselves in saying that after a careful reading of the record we are satisfied that the trial judge was justified, under the evidence, in finding the facts as they are set out. If the case were to be reversed by reason of the insufficiency of the evidence, then, for the guidance of the trial court upon a second trial, we would point out in detail where the weak spots are found. But the rule may well be otherwise when the court deems the evidence sufficient. Yet in view of the importance of the litigation, and the labor involved in the trial and the preparation of the record upon appeal, a few of the most important contentions of plaintiff will be noticed.

As to the milling contract of December, 1885, entered into with the mining company by Jones, the court has found that it was a fair contract for the mining company, and was honestly performed, and there is an abundance of evidence to support that finding. Indeed, there is hardly a substantial conflict of evidence upon the issue. If the contract made was a fair contract, and honestly performed, it would seem to be immaterial as to the part Mackay, Jones, and Flood took in making it. But waving the question as to what a court of equity might do with them if they had participated in the making of the contract, we find any participation absolutely denied by the evidence of both Mackay and Jones. Mr. Mackay testifies: "That at no time since November 17, 1883, either individually or with others, did he own or control a majority of the stock of the defendant. That he has not since that time taken any part in any election of any board of directors of the company, or attempted to control any action of the board of directors, or any member thereof. That he had nothing to do with their election, or influencing the stockholders or anybody else as to who should be elected, and never asked a shareholder for a proxy. I never asked or requested Mr. Havens, or anybody else connected with the company, to get proxies to be used at any stockholders' meeting. I have attended no meeting of the board of directors of the company since November 17, 1883." Mr. Jones testified: "I have taken no part whatever in the election of any board of directors of the company. I never spoke to any of the directors about their becoming directors, nor have any of

them ever spoke to me; have never done anything to secure the control of the board of directors of either of these companies; had nothing to do with it; never took any interest in it; could not have told you who they were. I have not procured, either directly or indirectly, in any manner, shape or form, the election of any director of the company, or made any attempt to do such a thing; never made any attempt in any manner to control the action of any board of directors of either of the companies that I have mentioned. I have never controlled or sought to control the affairs of the mining company, and I have never taken any part in its affairs at all." It is sufficient to say that the finding of the trial court was directly in line with this testimony.

The transactions evidenced by this litigation cover a period of seventy-one months. During that time there were four months when the milling company failed to return to the mining company seventy per cent of the pulp assay. But these returns were not greatly below seventy per cent, and when we consider that many other months intervened between each of the said four months, the failure at those times to return seventy per cent becomes immaterial; for it is disclosed by both evidence and findings that the actual per cent of the return by the milling company cannot be determined at the end of a single month, unless the run terminates at that time. This is accounted for by the reason of the clean-up made at the end of the run which raises the average of the return for every month during the run. Such was the fact in this case, as is disclosed by both evidence and finding. During this period of seventy-one months there were four months in which the returns were over ninety per cent of the pulp assay, and forty-two months in which those returns were between eighty and ninety per cent. Under this showing there is nothing whatever to indicate fraud in the milling of the ore, and nothing whatever to furnish any reason why a stockholder of the mining company should be dissatisfied.

The milling contract of December, 1885, was modified by the parties in December, 1886. It appears that during the year 1885 large bodies of richer ore were found, and for this reason and others—as, for example, the increase in the price and quantity of quicksilver required to mill the richer ores—the con-

tract was modified, whereby the milling company received compensation for transportation and milling based upon a scale per ton according to the richness of the ore. This contract is declared by the trial court to be a fair one, and to have been honestly and faithfully carried out. The evidence fully supports the finding. Even conceding that the evidence discloses a few instances where the milling company charged seven dollars per ton when they should have charged but six dollars, still there is nothing in such fact alone to indicate fraud. Indeed, it would seem that if mistakes of this character did occur, the balance of the account resulting therefrom stands in favor of the mining company.

In view of the fact that neither Mackay nor Flood was ever a director of the mining company, and in view of the further fact that the findings supported by the evidence declare that neither collectively nor individually did they control the directors of the mining company, it would seem that many of the matters raised upon the motion for a new trial and discussed in appellant's brief become immaterial. Indeed, these findings supported by the evidence would seem to almost undermine plaintiff's entire case. Certainly, upon such a state of facts the discussion of various matters of fact and law raised in appellant's brief becomes unnecessary. Plaintiff insists that the intentional concealment by Mackay and Flood of their interest in the contract of the milling company should weigh strongly against them. Yet, conceding this claim of concealment to be true, still these men were not directors of the mining corporation, nor did they control its directors. And as mere stockholders they owed it no duty. Again, for the same reason, the ruling of the court relating to the admissibility of Holden's evidence as an expert could not possibly prejudice plaintiff's case. In fact, it would seem that some of the questions we have already discussed and declared against appellant's contention could well have been disposed of upon this ground. After a careful examination of the record we see nothing which demands a retrial of the case.

For the foregoing reasons the order is affirmed.

Van Dyke, J., and Harrison, J., concurred.

Hearing in Bank denied.