Ida M. Krensky et al., Appellees, v. Ralph P. DeSwarte et al., Appellants.

Gen. No. 44,401.

Opinion filed November 1, 1948. Released for publication November 16, 1948.

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, of Chicago, for appellants; ALBERT E. JENNER, JR. and EDWARD H. HATTON, both of Chicago, of counsel.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for co-appellant; SHERWOOD K. PLATT, of Chicago, of counsel.

SHULMAN, SHULMAN & ABRAMS and MURAL J. WINS-
TIN, all of Chicago, for appellees; MEYER ABRAMS, of
Chicago, of counsel.

MR. PRESIDING JUSTICE FEINBERG delivered the opin-
ion of the court.

Plaintiffs filed their complaint February 15, 1943, in
the superior court of Cook county, against Ralph P.
DeSwarte, Carleton Elmes and Anton Meyer, as trus-
tees under the 5421 Cornell Building Liquidation
Trust, and against Randolph Bohrer and Andrew
Halas to compel an accounting to plaintiffs and other
beneficial certificate holders similarly situated, for an
alleged improper profit made by Bohrer and Halas in
the sale of the trust property, and for an accounting
against the trustees for loss to the certificate holders
because of alleged breach of trust, arising out of said
sale. A decree was entered in favor of plaintiffs
against trustee DeSwarte and against Bohrer and
Halas, from which they prosecute the present appeal.
Plaintiffs filed a cross-appeal from the decree dismiss-
ing the complaint against trustees Elmes and Meyer.

Other defendants were joined by an amended
and supplemental complaint, as to whom the cause was
afterwards dismissed. A third complaint, entitled
"Amended Complaint Conforming Allegations to the
Proof," was filed April 11, 1945, after the evidence had
been taken before a master, to whom the cause had
been referred, and supersedes the previous complaints
filed by plaintiffs. The decree entered must be con-
sidered based upon this final pleading and not the pre-
vious pleadings. There is no charge of conspiracy or
fraud in the last pleading against the trustees or the
other defendants, as was alleged in the prior pleadings,
unless it can be said that the allegations in the last
pleading sufficiently set up facts constituting fraud and
conspiracy.

There were three references to the master in the case—an original reference and two re-references—the second when the amended and supplemental complaint was filed charging fraud and conspiracy, and the third when the amended complaint to conform to the proofs was filed. Three reports were made by the master, each report recommending the dismissal of each of the complaints for want of equity. Exceptions to the last report were sustained by the chancellor and the decree appealed from entered.

The record discloses the following facts pertinent to the questions presented upon this appeal. The title to the real estate was held by a corporation, which issued its bonds in the principal sum of $290,000, secured by its trust deed, to the Continental Illinois National Bank and Trust Company, as trustee. There was a default in the payment of bonds on January 15, 1932. Foreclosure proceedings resulted, and the bondholders' committee, theretofore organized, acquired the title to the property. A liquidation trust agreement, dated November 26, 1934, was signed under the typical plan of reorganization then in common practice in foreclosure proceedings. The trustees named in the liquidation trust were defendants DeSwarte, Elmes and Meyer. The clear purpose expressed in the trust agreement was to liquidate the trust property by sale and distribution of the net proceeds of sale, whenever the trustees in their discretion deemed it advisable. The trustees were given the usual broad powers to manage, operate and conserve and sell the property during the life of the trust, which in any event was to terminate ten years from November 26, 1934.

Halas was a real estate broker and negotiated with Bohrer for the purchase of the real estate from the trustees. The efforts of Halas resulted in bringing to Bohrer the defendant Bertha as a purchaser of the property for $107,000. Halas and Bohrer also learned that a rival broker, A. M. Krensky, the husband of

plaintiff Ida Krensky, was interested in acquiring the property and purchasing 645 units of beneficial interest held by the Continental Bank. Bohrer, as an undisclosed principal, through Halas, succeeded in purchasing the beneficial certificates from the bank at $35 a unit. The purchase was made on December 23, 1942, with Bohrer's funds. In the interim, Halas informed trustee DeSwarte that he was acting for an undisclosed principal, who was willing to offer $85,000 for the property. DeSwarte secured an appraisal from a recognized real estate appraiser, who submitted an appraised valuation of $92,500 for the real estate. Further negotiations between Halas and DeSwarte resulted in a written offer delivered to the trustees on January 2, 1943, accompanied by a $5,000 check as earnest money in the name of Eleanor Wasil, who was secretary to Halas and his nominee for the purchase. The purchase price named was $93,000, less the usual real estate brokerage commission to Halas. The written offer, finally accepted by the trustees, resulted in a distribution to the certificate holders of $28.50 a unit.

The trustees met on January 5, 1943, and voted to submit the written offer to the certificate holders. Notice of the election by the trustees to submit the written offer to the certificate holders, and the terms of the notice to the certificate holders, were given to Halas. The trustees sent out a written notice on January 11, 1943, to the certificate holders, which in substance revealed the written offer of Eleanor Wasil to purchase the property for $93,000. It advised them of the appraisal showing an appraised value of $92,500, and that after all deductions, including brokerage commissions, there would be available for distribution $83,557.02. The attention of the certificate holders was called to Article II of the trust agreement, which provided that unless 33⅓ per cent or more of the units outstanding filed objections to the proposed sale within 30 days from the date of mailing of the notice, the sale

would be consummated. They were each invited to examine the written offer and the appraisal, as well as the records and reports of the trustees of their operation of the property, at the offices of the trustees, the address being given.

Broker Krensky, on February 5, 1943, sent a letter to the trustees, reciting that he would submit an offer in excess of that proposed in the notice of January 11, 1943, and on February 9, 1943, Krensky wrote the trustees, again stating that he had procured a purchaser (undisclosed) for the premises, at $105,000 less the usual brokerage commission. The letter also stated that if the trustees were willing to accept this offer, his client would submit the usual substantial deposit as earnest money and enter into a written agreement for the purchase of the property. No earnest money deposit accompanied the letter.

In the late afternoon of the last day of the time limit for filing objections by certificate holders, a written offer was received by the trustees from Harry Kunin for the purchase of the property for $95,000, accompanied by a check for $5,000 as earnest money, and stating that no brokerage commission need be paid if the offer was accepted. The check was not certified nor was it a bank cashier's check.

February 12, the trustees met, and it appeared that 240 units filed written objections, constituting little more than 9 per cent of the outstanding units and not the minimum 33⅓ per cent required under the terms of the trust agreement to bar a sale. The trustees, in order to be assured as to their duty with respect to the offer of Eleanor Wasil, and the letter of Krensky and the written offer of Kunin, secured a legal opinion from their attorneys, who advised them that they were legally bound to accept the Wasil offer, and that neither the letters of Krensky nor Kunin constituted a binding offer, and that they came too late. The sale to Wasil was consummated by delivery of a deed from

the trustees and the payment of the balance of the purchase price. The master in his reports found that the trustees, in the discharge of their duties in connection with the sale of the real estate, acted in good faith.

It also appears that in 1935, defendant DeSwarte was in the employ of the Continental Bank; that he knew the Continental Bank had received an offer of $50 per unit, which the bank had declined, and that he had this information while acting as trustee under the trust in question. It further appears that while the Continental Bank was unwilling to accept $50 a unit in 1935, they were willing to take less in 1942. There was evidence that the units were being traded in at prices ranging between $25 and $30 during the year 1942, and that plaintiff Ida Krensky bought her ten units for a total price of $260 on December 18, 1942, through a brokerage firm.

The decree ordered defendants Bohrer and Halas to account for any commission paid either of them on the sale of the trust property to defendant Bertha, and the trustees were directed to file within 30 days a full and accurate account of their distribution of the trust funds. Defendant Halas was directed to return to the trust estate the $3,790 received by him as commission.

Plaintiffs' position in support of the decree as to trustee DeSwarte is that his knowledge, during the time he was an employee of the bank as well as a trustee under the trust, of the offer to the bank in 1935 of $50 a unit, and that the property in 1935 could have brought $150,000, are facts which he, as trustee, should have revealed to the certificate holders at the time of the submission of the Wasil offer of purchase in 1943. As to Bohrer it is their position that he, being a certificate holder, like a stockholder in a corporation in the purchase of property from the corporation, occupied a fiduciary position to the other certificate holders; that it was his duty to inform them he had purchased these units held by him at $35 per unit from the Continental

Bank, through Halas, acting as broker; and to also inform them that when he made the offer of purchase for $93,000 to the trustees in the name of a dummy, Wasil, he had already entered into an arrangement to sell the property to defendant Bertha for $107,000. As to Halas plaintiffs argue that acting as agent for Bohrer, he knew the facts, stood in the same position as Bohrer, and was obliged to account for the commission received by him from the trustees. Plaintiffs have here conceded that unless Bohrer, as a certificate holder, may be regarded as occupying a fiduciary relation to the other certificate holders in this transaction, the case against him fails, and correspondingly as to Halas.

We have reviewed the cases cited by plaintiffs touching upon this question of fiduciary relation. We are satisfied that the better reasoned authorities hold that a certificate holder in a liquidation trust, as a matter of law, does not occupy a fiduciary relation to the other certificate holders in the trust, and owes them no duty save to refrain from practicing any fraud upon them. We need not go beyond *Schumann-Heink v. Folsom*, 328 Ill. 321, upon this question. In that case the differences are outlined between the stockholders of a corporation and the certificate holders in a trust, the directors of the corporation and the trustees of the trust, and the principle is clearly stated at p. 327:

"The stockholders of the corporation control, through the board of directors, the business of the corporation, while the unit holders of a business trust have no mutual rights and obligations and do not control the action of the trustees. . . . A trust is an estate the legal title to which is vested in a trustee and the equitable title to which is held by individuals who bear *no contractual relations among themselves.*" (Italics ours.)

To the same effect is *Leventhal v. Atlantic Finance Corp.*, 316 Mass. 194, where they held that a

stockholder does not stand in a fiduciary relation with the other stockholders or with the directors of the company. *Bell v. Ley & Co.,* 278 Mass. 60. The fact that he is a certificate holder does not bar him from contracting with the trustees for the purchase of trust property, if he be free from any fraud which could vitiate the contract. In *Merrick v. Peru Coal Co.,* 61 Ill. 472, 478, it is said:

"There is no rule of law which prohibits a shareholder from dealing with the company."

See also *Iowa Drug Co. v. Souers,* 139 Iowa 72; *Louisville Ry. Co. v. United States,* 20 F. Supp. 483; *Fox v. Mackay,* 125 Cal. 57, 57 Pac. 670; *Davis v. Nueces Valley Irr. Co.,* 103 Tex. 243; *Rothchild v. Memphis & C. R. Co.,* 113 Fed. 476. In *Hooker v. Midland Steel Co.,* 215 Ill. 444, where a director bought the stock of a shareholder, and the claim was made that he should have frankly disclosed all of his information as to the condition of the company and the value of the stock, and that he owed a fiduciary relation toward the stockholders, the court said, quoting with approval from Cook on Stock and Stockholders, § 320:

" 'There is no confidential relation between him and a stockholder, . . . and so long as he remains silent and does not actively mislead the person with whom he deals the transaction cannot be set aside for fraud.' Beatty did not sustain such a trust relation to the complainant, as an individual stockholder, as would prevent him, in the absence of actual fraud, from purchasing the stock (10 Cyc. 796; *Carpenter v. Danforth,* 52 Barb. 581; *Walsh v. Gouldin* [130 Mich. 531], 90 N. W. Rep. (Mich.) 406; 1 Morawetz on Private Corp. 357)."

 In addition to the holdings in the cases cited, we find that the trust agreement under which the trustees acted, and binding upon all certificate holders, con-

tained the specific provision that the certificate holders are declared to be trust beneficiaries only, and they, the committee and its members, and the trustees "shall have no other relationship hereunder;" that the relationship or liability is not that of partners, "or any other relation or personal liability whatsoever, legal or equitable, among themselves, or one with the others, or any of them, or with any other person or persons, corporation or corporations." Each certificate holder had a right in acquiring his certificate to rely upon this provision of the trust agreement, and cannot be saddled with a fiduciary relation or liability without his consent, express or implied, contrary to said provision.

We are convinced that the chancellor erred in entering a decree against Bohrer and Halas. As to trustee DeSwarte, neither the allegations in the last amended complaint, upon which the decree is based, nor the evidence, sufficiently allege or prove any breach of trust on the part of this trustee. The notice to the certificate holders, and the offer of Wasil, invited the certificate holders to examine the records and reports of the trustees as well as the minutes of their meetings during their entire term as trustees, the written offer of Wasil on file, the appraiser's report, giving them the address at which all of these could be inspected, as an aid to them to determine the advisability of accepting the Wasil offer. To that extent, at least, there was no effort to conceal any of the facts from the certificate holders. Had they inspected these records, they would not have discovered any facts in the possession of the trustees, which a failure to reveal could constitute concealment of material facts and a breach of duty as trustee. The master found that the trustees acted in good faith in this sale, and we think the evidence in the record amply supports his conclusion. The decree against trustee DeSwarte is likewise unwarranted.

The decree of the superior court is reversed and the cause remanded with directions to overrule the excep-

tions of the complainants to the master's report, and to enter a decree sustaining the master's report and dismissing the complaint for want of equity.

*Reversed and remanded with directions.*

TUOHY and NIEMEYER, JJ., concur.