**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**SOUTH BEND COMMUNITY SCHOOL CORPORATION, et al.,
Defendants-Appellees,**

**and**

Clay Quality Education II, Inc. and South Bend Branch of the National Association for the Advancement of Colored People, Proposed Intervenors, Appellants.

Nos. 81–1792, 81–2062.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 18, 1982.

Decided July 28, 1982.*

Opinion Oct. 14, 1982.

---

* This appeal was originally decided by unreported order on July 28, 1982. On motion of defendants-appellees, this Court has decided to publish our July 28, 1982, order of affirmance as a citable opinion.

Donald A. Schabel, Indianapolis, Ind., Tresa Demachak, N.A.A.C.P., New York City, for proposed intervenors, appellants.

Franklin A. Morse, II, Thornburg, McGill, Deahl, Harman, Carey & Murray, South Bend, Ind., for defendants-appellants.

Louise Lerner, Civ. Rights Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, BAUER, Circuit Judge, and DOYLE, Senior District Judge.**

CUMMINGS, Chief Judge.

The United States filed this suit in February 1980 against the South Bend Community School Corporation, its superintendent, its Board of School Trustees and the 7 members thereof alleging that defendants had engaged in various acts of discrimination with the intent and effect of segregating students and faculty on the basis of race in the South Bend, Indiana public school system. The suit was brought under Section 407 of Title IV of the Civil Rights Act of 1964 (42 U.S.C. § 2000c–6) and Section 207 of the Equal Educational Opportunities Act of 1974 (20 U.S.C. § 1706). The

** The Honorable James E. Doyle, Senior District Judge for the Western District of Wisconsin, is sitting by designation.

Government sought an injunction prohibiting defendants from discriminating on the basis of race or color in operating the schools within territory served by the South Bend Community School Corporation and requiring defendants to develop and implement a desegregation plan which would remove "all vestiges of prior discrimination."

The district court, simultaneously entered a consent order submitted by the parties and calling for defendants to develop and implement a desegregation plan for student assignments by the beginning of the 1981–1982 school year. 511 F.Supp. 1352. The crux of the plan was to provide that black students in each school would be within 15% of the total percentage of black students in the school system. The plan was also to ensure that student transportation or school closings would fall equitably on all racial groups. Faculty assignments were to be adjusted by the beginning of the 1980–1981 school year so that the faculty of each school would reflect the racial composition, teaching experience and teaching disciplines of the faculty as a whole. The plan was also to provide for ancillary relief with respect to staff training, curriculum evaluation and revision, equal quality facilities, and substantially equal discipline practices.

Under the consent order, the school board developed a new faculty assignment plan, which went into effect at the beginning of the 1980–81 school year. In addition, the school board enlisted community support for the development of its new student assignment plan. A Citizen's Advisory Committee was formed, and over 300 citizens, many of them residents of Clay Township, volunteered to serve on subcommittees. Subcommittees met over 150 times between February and December 1980, and nearly 200 people actively participated in the meetings. All meetings were open to the public and were given extensive newspaper publicity. The subcommittees' recommendations were subsequently reported to the school board by the Citizen's Advisory Committee.

In the meantime, the school board's planning team formulated a number of alternative desegregation plans during the fall of 1980, and in late November decided on a recommended plan. This process was given extensive local media coverage, and, on December 17, 1980, the precise details of the proposed plan were made available to the public and the media in printed form and were aired on the local public television station. During the months of December 1980 to February 1981, the school board held a dozen special meetings devoted solely to the plan. The meetings were heavily publicized in school newsletters as well as in the local news media, and all citizens were invited to speak at the meeting and were encouraged as well to submit written comments. Throughout this process, the school board made it known to the public that it was operating on a timetable which required implementation of a desegregation plan by the beginning of the 1981–82 school year.

At the conclusion of these proceedings, during a meeting on February 26–27, 1981, the Board of School Trustees passed a resolution adopting a desegregation plan for student assignments. On February 27, 1981, the parties to this suit submitted to the district court a proposed consent order incorporating the plan. The plan was subsequently revised, resubmitted to the district court on April 3, 1981, and was adopted by that court on April 17, 1981. The validity of the plan is not before us.

On February 26, 1981, the day before the parties hereto first submitted to the district court the proposed consent order incorporating the desegregation plan, appellant Clay Quality Education II, Inc. (Clay) sought leave to intervene as a defendant. Clay is an Indiana not-for-profit corporation whose members are parents of children in the South Bend school system. Clay seeks to represent its members' children and all other students in the school system. If Clay's intervention were granted, it planned to request the district court to vacate the first consent order because there was no finding by the court or admission by the defendants of a constitutional violation. Clay said it would also answer the Government's complaint by denying any intention-

al racial discrimination and would file a cross-claim contending that defendants' "dismantling of the neighborhood school system deprived students and their parents of liberty and property without due process of law." Subsequently Clay contended that the district court had no subject matter jurisdiction.

Four days after the desegregation plan was submitted to the district court, the South Bend Branch of the National Association for the Advancement of Colored People (NAACP) also sought leave to intervene, but as a plaintiff. It sought to challenge the desegregation plan on behalf of black children in the school district and their parents. It also sought to challenge the transfer of students in North Liberty Township, an all-white area, from the South Bend school system to an adjoining all-white school system. This transfer had been approved by the school board after the entry of the initial consent order in 1980.

Judge Sharp held a hearing on the motions to intervene on March 5, 1981. The Government and defendants opposed intervention by Clay and the NAACP. However, in an attempt to resolve the NAACP's objections to the consent decree, the parties subsequently met with it. This resulted in the submission of a revised consent decree on April 3, 1981, and, as noted, it was this revised decree that was entered by the district court on April 17, 1981.

In the memorandum and order entered on April 17, 511 F.Supp. 1352, the district court inter alia denied the NAACP's and Clay's motions to intervene. As the court noted, the defendants opposed the NAACP's intervention on the grounds that it was adequately represented by the Attorney General of the United States and that its application was untimely.

Judge Sharp stated that this Court had set the standard to measure the adequacy of representation in school desegregation cases in *United States v. Board of School Commissioners of the City of Indianapolis,* 466 F.2d 573, 575 (7th Cir. 1972), certiorari denied, 410 U.S. 909, 93 S.Ct. 964, 35

L.Ed.2d 271. There we quoted the Fifth Circuit's opinion in *Martin v. Kalvar Corp.,* 411 F.2d 552, 553 (5th Cir. 1969), stating that "representation is adequate if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed intervenor and if the necessary representative does not fail in the fulfillment of his duty." See also *Meridian Homes Corporation v. Nicholas W. Prassas & Company,* 683 F.2d 201 at 205 (7th Cir., 1982). The district judge found that the NAACP failed to show inadequacy of representation by the Justice Department and that there was no showing of collusion between the parties. He noted that the NAACP admitted that it and the Government had a similar goal and that the NAACP had not shown that counsel for the Government failed to fulfill his duty. Because the district court held that the NAACP did not carry its burden regarding the inadequacy of representation, its motion to intervene was denied without consideration of timeliness.

As to Clay's motion to intervene, the court remarked that it resembled "Citizens of Indianapolis for Quality Schools" which was denied intervention in the Indianapolis desegregation case because that would-be intervenor had also not shown that the school board was inadequately representing its interests. *United States v. Board of School Commissioners of the City of Indianapolis, supra,* 466 F.2d at 575–576. In response to Clay's argument that it should be permitted to intervene because defendants too eagerly adopted the desegregation plan, the court pointed out that the Indiana legislature had required the defendant Board of Trustees to adopt a plan of desegregation surpassing minimal constitutional standards by requiring integration to the fullest extent "reasonable, feasible and practical." Ind.Code § 20–8.1–2–3. The opinion observed that Clay could seek redress in the state courts if defendants had violated Indiana law. Clay's contention that it wanted to prevent the defendants from "disman-

tling the neighborhood school system" was rejected because there was no constitutional or statutory right to attend a neighborhood school, as held in *United States v. Perry County Board of Education,* 567 F.2d 277, 279 (5th Cir. 1978). Therefore Clay's motion to intervene was also denied.[1]

On May 27, 1981, the district court stayed the implementation of the April 17th consent decree pending appeal, and a few days later denied reconsideration of the order refusing intervention. Thereafter the parties moved our Court to vacate the stay and we did so on August 5, 1981, because we concluded that appellants had no likelihood of prevailing on the merits of their appeals from the denials of intervention. In doing so, we noted that (1) a claim resembling Clay's claim of inadequate representation by defendants had been rejected by us in the Indianapolis school desegregation case, *supra,* 466 F.2d 573 at 575–576, (2) Clay had not established the existence of a right to attend a neighborhood school, (3) the district court had not abused its discretion in denying permissive intervention, and (4) Clay had not shown that it would suffer irreparable injury by vacation of the stay. At the same time, we consolidated the NAACP's appeal with Clay's appeal. We now affirm the district court's denial of the motions to intervene.

### I  *Clay's Motion to Intervene Was Properly Denied*

■ Clay's motion to intervene as a right under Rule 24(a) of the Federal Rules of Civil Procedure was filed on behalf of all the students in the South Bend school system to challenge the first consent order.[2] The rule provides that such intervention is not warranted if "the applicant's interest is adequately represented by existing parties." As we held with respect to a similar argument in *United States v. Board of School Commissioners of the City of Indianapolis,*

*supra,* the students' interests were already represented by the school board. The school board is a governmental body and its officers are charged by law with representing the interests of the students. Ind.Code § 20–5–2–1. Adequate representation of the students is therefore to be presumed where, as here, there has been no showing of gross negligence or bad faith. *Commonwealth of Pennsylvania v. Rizzo,* 530 F.2d 501, 505 (3d Cir. 1976), certiorari denied, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375; *Blocker v. Board of Education of Manhasset,* 229 F.Supp. 714, 715 (E.D.N.Y.1964). As we observed in the Indianapolis school litigation, that a proposed intervenor might be "less prone to agree to the facts and [might take] a different view of the applicable law does not mean that the school board did not adequately represent its interests in the litigation." 466 F.2d at 575. To the same effect, see *United States v. Perry County Board of Education, supra,* 567 F.2d at 280.

Clay (as well as the NAACP) relies on *Smuck v. Hobson,* 408 F.2d 175 (D.C.Cir. 1969) (en banc) to support intervention of right. In *Smuck,* three of seven circuit judges found that parents of students could intervene as of right in order to bring an appeal in lieu of the nonappealing school board. 408 F.2d at 178–182. The district court had found that the parents failed to meet the procedural requirements for intervention under Rule 24(c) and moreover failed to allege either "how they or their children are affected" by the district court's decree or "a denial of any rights, constitutional or otherwise." *Hobson v. Hansen,* 44 F.R.D. 18, 25–26 (D.D.C.1968). The three circuit judges, however, would have allowed the parents' intervention in order to secure appellate jurisdiction. To the extent that the advice of the three judges in *Smuck* may be contrary to *United States v. Board of School Commissioners of the City of Indi-*

---

**1.** The National Educational Association-South Bend has filed an *amicus* brief in support of the District Court's order denying the motions to intervene.

**2.** Clay has not challenged on appeal the denial of permissive intervention under Rule 24(b) of the Federal Rules of Civil Procedure.

*anapolis, supra,* we will adhere to our opinion in the latter case.[3]

As stated in the first consent decree, the defendants decided it was in the best interests of the students to resolve the segregation controversy without contested litigation, thus avoiding a substantial expenditure of public funds which could be better used to achieve the educational goals of the school system (App. 7). Through that consent order, defendants achieved flexibility in developing their own preferred plan instead of requiring the court to come up with its own desegregation plan. Clay has not shown that defendants did not fairly consider the interests of the students in deciding to agree to the first consent order. Since the district court correctly held that Clay's interests were adequately represented by the defendants, there is no need for us to consider the defendants' alternative ground that Clay's motion to intervene was untimely.

## II  *The NAACP's Motion to Intervene As of Right Was Properly Denied*

█ The NAACP first sought to represent as of right all black students in the South Bend school district and their parents even though the interests of that class are represented by the Government under the Civil Rights Act of 1964 and the Equal Educational Opportunities Act of 1974. The NAACP has conceded that it and the Government have a similar objective, namely, "the system-wide desegregation of students and staff as called for in the consent decree" (App. 67). The only disagreement shown was with respect to the "road map" to be used to achieve that goal.

Since the NAACP and the Government had the same ultimate objective, we presume that the Government adequately represents the NAACP. *United States Postal Service v. Brennan,* 579 F.2d 188, 191 (2d Cir. 1978). The presumption is especially appropriate because the existing representative, namely, the Government, is charged by law with representing the interests of the absentee. *Commonwealth of Pennsylvania v. Rizzo, supra,* 530 F.2d at 505. There was no showing of gross negligence or bad faith on the part of the Government or collusion between the parties to overcome the presumption of adequate representation. Additionally the NAACP did not demonstrate that the Government was representing any interests adverse to those of the NAACP or that government counsel was ineffective. As already noted, the parties to the suit met with the NAACP and revised the plan incorporated in the second consent decree before its entry on April 17, 1981. In sum, inadequate representation by the Government was not shown.

The NAACP has not attacked the proposed desegregation plan as constitutionally or otherwise inadequate and has merely suggested improvements. A consent decree of this nature need not contain a perfect plan but only one that is "not unconstitutional, unlawful, * * * contrary to public policy, or unreasonable." *United States v. City of Miami,* 614 F.2d 1322, 1333 (5th Cir. 1980).[4] Therefore the NAACP's supposed improvements for the plan do not require its intervention.[5]

## III  *The NAACP's Permissive Intervention Motion Was Properly Denied*

█ In its April 17, 1981, opinion, the district court mentioned that the NAACP alternatively sought permissive intervention under Rule 24(b)(2) of the Federal

---

3. *Smuck* has since been limited by the District of Columbia Circuit in *Moten v. Bricklayers, Masons and Plasterers, etc.,* 543 F.2d 224, 227 (D.C.Cir.1976), and the Fifth Circuit has expressly declined to follow *Smuck. United States v. Perry County Board of Education,* 567 F.2d 277, 279 (5th Cir. 1978).

4. The Fifth Circuit reaffirmed this standard after a rehearing *en banc.* 664 F.2d 435, 441 (1981).

5. The NAACP has stated that it sought intervention partly to challenge the transfer of North Liberty Township to an adjacent school system. However, this transfer was not involved in the lawsuit nor in either consent decree and consequently is impervious to challenge in this lawsuit.

Rules of Civil Procedure. In footnote 6 to the opinion, the court noted that said Rule required it "in exercising its discretion," to "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." This must have been the criterion used by Judge Sharp in *sub silentio* denying permissive intervention to the NAACP because he did not consider the untimeliness of the request. The NAACP's intervention would certainly have delayed the proceedings and prejudiced defendants' ability to open a desegregated school system in the fall of 1981. Therefore the motion for permissive intervention was properly denied on those grounds. *Equal Employment Opportunity Commission v. United Air Lines, Inc.,* 515 F.2d 946, 949 (7th Cir. 1975). As this Court correctly predicted in vacating the district court's stay pending appeal, "there is even less likelihood that appellant can prevail on its claim that the district court abused its discretion in denying permissive intervention." April 5, 1981 order, p. 4.

The order denying the motions to intervene is affirmed.[6]

---

**6.** Because of our disposition of the motions to intervene, we do not consider the intervenors' opposition to the desegregation plan approved by the district court as well as Clay's argument that the district court was without subject matter jurisdiction.