764 F.2d 1265
 54 USLW 2015, 2 Fed.R.Serv.3d 956
 Louis G. KEITH, M.D., et al., Plaintiffs-Appellees,
v.
Richard M. DALEY, State's Attorney for the County of Cook,
Neil F. Hartigan, Attorney General of the State of Illinois
and Fred H. Uhlig, Acting Director of Public Health, State
of Illinois, Defendants,
and
Illinois Pro-Life Coalition, Inc., III, Intervening
Defendant-Appellant.
 No. 84-2860.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 11, 1985.
Decided June 18, 1985.
 
 Colleen K. Connell, The Roger Baldwin Fdn. of ACLU, Inc., Chicago, Ill., for petitioner.
 Maura K. Quinlan, Chicago, Ill., for defendants.
 Before BAUER and CUDAHY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 BAUER, Circuit Judge.
 
 
 1
 The Illinois Pro-Life Coalition (IPC), a state lobbying organization, seeks to intervene in a suit brought by a group of physicians who perform abortions and challenging the constitutionality of an Illinois statute regulating abortion. The district court denied IPC leave to intervene as a matter of right. The district court also denied IPC's motion for permissive intervention. We affirm both decisions of the district court.
 
 
 2
 * On June 30, 1984, the Illinois General Assembly enacted, over gubernatorial veto, House Bill 1399 (HB 1399), further amending the Illinois Abortion Law of 1975. On July 1, 1984, plaintiff physicians filed a class action lawsuit seeking a declaratory judgment that HB 1399 violated the United States Constitution and a permanent injunction prohibiting the State of Illinois from enforcing any of its provisions. Named as defendants were Illinois Attorney General Neil F. Hartigan, Acting Director of the Illinois Department of Public Health, Fred H. Uhlig, and Richard M. Daley, in his capacity as Cook County State's Attorney and as a representative of a proposed defendant class of all Illinois state's attorneys. Plaintiffs allege that HB 1399 violates a woman's right of privacy and violates their right to practice medicine. Plaintiffs allege that certain of the challenged subsections are identical to sections held unconstitutional in Charles v. Carey, 579 F.Supp. 464 (N.D.Ill.1983), aff'd, 749 F.2d 452, 461-62 (7th Cir.1984). Plaintiffs also challenge sections of HB 1399 which inter alia, declare, that human life begins at conception, Section 2(6), require physicians to elevate fetal life above that of a pregnant woman, Section 6(1), require physicians to use "life-saving" abortion techniques on non-viable fetuses, Section 6(4), subject physicians to prosecution under the homicide laws for aborting nonviable fetuses, Section 6(3), and require physicians to inform their patients about "fetal pain." Section 6(6).
 
 
 3
 Illinois Pro-Life Coalition is a not-for-profit organization incorporated in Illinois in 1980. IPC's bylaws provide that its purposes include the promotion of the basic human right to life, specifically for unborn children, and the presentation and support of alternatives to abortion. IPC championed HB 1399 throughout its consideration by the Illinois state legislature. IPC lobbied for the original bill and against the governor's veto, and distributed a detailed constitutional analysis of the bill. IPC supported HB 1399's new standards of care to improve the likelihood of abortion survival for viable fetuses, Section 6(1), and for fetuses for whom "there is a reasonable possibility of sustained survival ... outside the womb," Section 6(4), as well as its requirement that second physicians be present when abortions are done after viability. Section 6(2).
 
 
 4
 On August 16, 1984, IPC moved to intervene as a defendant in this case. IPC asserted as interests of its members the intensive lobbying for abortion alternatives and fetal protections in which IPC has been engaged and the willingness of its members to adopt fetuses which have survived abortions. Americans United for Life Legal Defense Fund, counsel for IPC, also asserted its frequent representation of intervenors in other lawsuits relating to the constitutionality of abortion, including Williams v. Zbaraz, 448 U.S. 358, 100 S.Ct. 2694, 65 L.Ed.2d 831 (1980), Harris v. McRae, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980), Charles v. Daley, 749 F.2d 452 (7th Cir.1984); Planned Parenthood Association-Chicago Area v. Kempiners, 700 F.2d 1115 (7th Cir.1983); Wynn v. Carey (II), 599 F.2d 193 (7th Cir.1979), and Wynn v. Carey (I), 582 F.2d 1375 (7th Cir.1978). After the matter was briefed and after oral argument, the district court denied the motion without a written opinion on September 28, 1984. The court did grant IPC leave to participate as amicus curiae stating that it would carefully consider "any briefs filed by IPC."
 
 II
 
 5
 The Federal Rules of Civil Procedure set forth four requirements which a proposed intervenor must satisfy before intervention of right is allowed: (1) the application must be timely; (2) the applicant must have a direct and substantial interest in the subject matter of the litigation, (3) the applicant's interest must be impaired by disposition of the action without the applicant's involvement; and (4) the applicant's interest must not be represented adequately by one of the existing parties to the action. Fed.R.Civ.P. 24(a)(2); United States v. 36.96 Acres of Land, 754 F.2d 855, 858 (7th Cir.1985). The applicant has the burden of proving each of the four elements of intervention as of right; the lack of one element requires that the motion to intervene be denied. 36.96 Acres, 754 F.2d at 858; CFTC v. Heritage Capital Advisory Services, Ltd., 736 F.2d 384, 386 (7th Cir.1984). Plaintiffs conceded that the defendants had filed their motion to intervene in a timely fashion and the district court gave no indication that IPC had failed to meet the timeliness requirement. We hold, however, that IPC lacks the direct interest required to support intervention as of right and we will discuss only this criteria. Because the four requirements, however, are facets of the same problem, 3B Moore's Federal Practice p 24.07 at 24-51, some of our analysis will refer to the other factors of impairment and representation.
 
 
 6
 A proposed intervenor must demonstrate a direct, significant and legally protectable interest in the property at issue in the law suit. The interest must be based on a right that belongs to the proposed intervenor rather than to an existing party in the suit. Wade v. Goldschmidt, 673 F.2d 182, 185 (7th Cir.1982). The interest must be so direct that the applicant would have "a right to maintain a claim for the relief sought." Heyman v. Exchange National Bank of Chicago, 615 F.2d 1190, 1193 (7th Cir.1980).
 
 
 7
 IPC first asserts that the "interest" factor must be broadly construed in public law cases where public interest organizations seek intervention. IPC asserts that this court supported a more liberal reading of public law intervention requirements in United States v. Board of Sch. Com'rs, Indianapolis, Inc., 466 F.2d 573 (7th Cir.1972). IPC also relies on several commentators who assert that the "complexity and multiplicity of interests in modern claims for relief" require "liberalized intervention practices." IPC Brief at 5, citing Albert, Standing to Challenge Administrative Action An Inadequate Surrogate for Claim to Relief, 83 YALE L.J. 425, 484 & n. 285 (1974); Bremet, A Study in the Allocation of Scarce Judicial Resources: The Efficiency of Federal Intervention Criteria, 12 GA.L.REV. 701 (1982); Weinstein, Litigation Seeking Changes in Public Behavior & Institutions--Some Views on Participation, 13 U.CAL.DAVIS L.REV. 231 (1980).
 
 
 8
 We do not believe that Indianapolis supports a broad interpretation of the interest factor in public law cases. In Indianapolis, Citizens of Indianapolis for Quality Schools (CIQS) moved to intervene as a party defendant on behalf of all students in the Indianapolis Public Schools in a lawsuit brought by the United States charging the Board of School Commissioners for the City of Indianapolis with racial discrimination in the assignment of faculty and students. This court recognized that "all students ... have an interest in a sound educational system in accordance with the law," id. at 575, but affirmed the district court's denial of intervention as of right and held that the district court had not abused its discretion by denying permissive intervention. Id. at 576. This court vacated the district court's order and remanded only for consideration of the appropriateness of intervention in other expanded parts of the litigation. Later desegregation cases have reaffirmed that a generalized interest in a "sound educational system" is not enough to establish intervention as of right. See, e.g., Brookins v. South Bend Community School Corp., 710 F.2d 394 (7th Cir.1983); United States v. South Bend Community School Corp., 692 F.2d 623 (7th Cir.1982).
 
 
 9
 Contrary, therefore, to IPC's arguments, no special broad definition of "interest" applies to suits involving "public law" cases in this circuit. Intervention as of right requires a direct and substantial interest. IPC asserts that its interests as a lobbyist support its intervention as of right, arguing that its "very existence is intertwined with its ability to promote this type of legislation and to insure that such laws are adequately defended if challenged." IPC Br. at 15. IPC also asserts an interest in the protection of the unborn and its members' interests in adopting children who survive abortions. None of the three particular interests asserted by IPC meet the "direct and substantial interest" test.
 
 
 10
 IPC's interest as chief lobbyist in the Illinois legislature in favor of HB 1399 is not a direct and substantial interest sufficient to support intervention in the instant lawsuit. In Wade v. Goldschmidt, 673 F.2d 182 (7th Cir.1982), this court concluded that the status of lobbyist did not alone create a direct and substantial interest sufficient to support intervention as of right. The intervenors in Wade, a lobbyist group in support of the construction of a bridge, whose construction the Wade plaintiffs had challenged, asserted generalized economic, personal and environmental interests in the bridge. This court denied intervention, stating that in a suit such as this,
 
 
 11
 brought to require compliance with federal statutes regulating governmental projects, the governmental bodies charged with compliance can be the only defendants.... We hold that the proposed intervenors' interests do not relate 'to the subject of the action' and they have therefore failed to assert an interest in the lawsuit sufficient to warrant intervention as a right.
 
 
 12
 Id. at 185.
 
 
 13
 Similarily, in this case, the governmental bodies charged with compliance can be the only defendants. Plaintiffs initiated this lawsuit to protect their constitutional rights which they allege would be violated by the restrictions HB 1399 places upon physicians who perform abortions. Only the defendant Attorney General and the defendant Cook County State's Attorney are required to defend and enforce the law of the state of Illinois, including HB 1399.
 
 
 14
 More recently, this court also rejected another lobbyist's petition for intervention. In United States v. 36.96 Acres of Land, 754 F.2d 855 (7th Cir.1985), the United States instituted a condemnation action against the Northern Indiana Public Service Company (NIPSCO) to acquire Crescent Dune, part of the Indiana Dunes National Lakeshore. The Indiana Dunes National Lakeshore Act, 16 U.S.C. Sec. 460u-12, authorized the United States to acquire Crescent Dune. Four years after the United States had filed suit, the Save the Dunes Council moved to intervene. The Save the Dunes Council, a not-for-profit corporation, had "lobbied hard for the passage of the 1976 amendments to the Indiana Dunes Act which authorized acquisition of Crescent Dune, and prepared the base map used to determine the official boundary information for the 1976 amendments." 36.96 Acres, 754 F.2d at 857. The district court denied the Council's motion to intervene and this court affirmed.
 
 
 15
 This court found that the Council possessed neither of the two interests considered in an eminent domain proceeding: the power of the sovereign to exercise eminent domain and the interest through private ownership of the condemned property. While recognizing that "the council has played a laudatory role in the development of the Indiana Dunes," 36.96 Acres, 754 F.2d at 859, this court found that only the Secretary has the authority to condemn Crescent Dune and only NIPSCO could claim ownership of the property. 36.96 Acres, 754 F.2d at 858. This court concluded, therefore, citing Wade, that "[w]hile the Council's aesthetic and environmental interest in Crescent Dune may indeed be legitimate and demonstrable, we cannot say that it is direct, substantial or legally protectable. Therefore, the Council's interest in 'guaranteeing the preservation of [Crescent Dune's] natural beauty,' ... for public use is not the type of interest which justifies intervention under Rule 24(a)." 36.96 Acres, 754 F.2d at 859.
 
 
 16
 Intervenors in the instant case present a weaker case for intervention than did the Save the Dunes Council. The Dunes Council had a 30 year commitment to the establishment of the Dunes, and had submitted affidavits that its members used the Indiana Dunes. 36.96 Acres, 754 F.2d at 861 (Cudahy, J., dissenting). Moreover, the Council had alleged that the plaintiffs failed to meet the third criterion of adequacy of representation in that "the Secretary, after a long delay, had abandoned efforts at acquisition in September 1983." 36.96 Acres, 754 F.2d at 862 (Cudahy, J., dissenting). See also id. 754 F.2d at 859-60 (majority notes that the Council's allegations against the Secretary were "of the type for which mandamus would provide a remedy.")
 
 
 17
 In the instant case, however, IPC's interests are more attenuated. IPC was incorporated only 5 years ago in 1980. Moreover, its purpose is essentially communicative and persuasive. IPC seeks to inform people about abortion and about IPC's preference for alternatives to abortion. IPC also seeks to lobby legislators so that its views on the protection of "the unborn" may become law. In an America whose freedom is secured by its ever vigilant guard on the openness of its "marketplace of ideas," IPC is encouraged to thrive, and to speak, lobby, promote, and persuade, so that its principles may become, if it is the will of the majority, the law of the land. Such a priceless right to free expression, however, does not also suggest that IPC has a right to intervene in every lawsuit involving abortion rights, or to forever defend statutes it helped to enact. Rule 24(a) precludes a conception of lawsuits, even "public law" suits, as necessary forums for such public policy debates.
 
 
 18
 Moreover, the defendants in the instant case are ably representing HB 1399. The IPC suggests that it is the principal proponent of HB 1399, and that the defendants, while "honorably committed to their duty of defending duly enacted state legislation ... cannot match the conviction and thorough knowledge of the subject area held by the proposed intervenors." IPC br. at 7. A subjective comparison, however, of the conviction of defendants and intervenors is not the test for determining adequacy of representation. Adequacy can be presumed when the party on whose behalf the applicant seeks intervention is a governmental body or officer charged by law with representing the interests of the proposed intervenor. United States v. South Bend Community School Corp., 692 F.2d 623 (7th Cir.1982), Wade v. Goldschmidt, 673 F.2d 182, 186 n. 7 (7th Cir.1982). Moreover, we need not rely only on this presumption. The record in this case indicates that the named defendants charged by law with defending the laws of Illinois, see, e.g., Ill.Rev.Stat. ch. 14, paragraphs 4, 5 (1983), have adequately defended this suit. IPC makes no allegations to the contrary. Thus, IPC's right to intervene in the instant lawsuit is even less substantial than was the Dune Council's asserted right to intervene, in terms of both interest and representation.
 
 
 19
 IPC's assertion of an interest in the protection of "unborn" children is also insufficient to justify intervention as of right. The Supreme Court has unequivocally ruled on the assertability of fetal rights. "The word 'person,' as used in the fourteenth amendment, does not include the unborn." Roe v. Wade, 410 U.S. 113, 158, 93 S.Ct. 705, 729, 35 L.Ed.2d 147 (1973). The state may not, therefore, assert any legitimate interest in potential life until the fetus has reached "viability," that is, until the fetus has the capability of "sustaining meaningful life outside the mother's womb." Id. at 163, 93 S.Ct. at 732. Furthermore, it is the state alone who can assert an interest in the unborn, and it can only assert that interest after viability. "[B]ecause the State cannot regulate or proscribe abortion during the first stage, when the physician and his patient make that decision, the State cannot delegate authority to any particular person ... to prevent abortion during that same period." Planned Parenthood of Missouri v. Danforth, 428 U.S. 52, 69, 96 S.Ct. 2831, 2841, 49 L.Ed.2d 788 (1976). Thus, IPC has no legally protectable interest in asserting or protecting "unborn" children.
 
 
 20
 IPC's final asserted interest is the interest of its members in adopting fetuses who survive abortions. Four members of IPC have submitted signed affidavits to this court which state that they "stand ready, willing and able to adopt a child who survives an abortion, even if that child might be handicapped." (Affidavits of N. Coughlin, R. Rivera, J. Solms and K. Coughlin). IPC argues that the provisions of the Illinois abortion law challenged by plaintiffs primarily concern the ability of the State to increase the chances of survival of aborted fetuses, and that they have an interest in defending this lawsuit as potential adoptive parents of these fetuses.
 
 
 21
 IPC's members' interest in adopting fetuses "born alive" after abortions is, while commendable, far too speculative an interest to support IPC's alleged right to intervene in this lawsuit. IPC's interest relies in part on 38 I.A.S. Sec. 81-27 (1984) which provides that the physician performing an abortion which results in a live fetus must contact the Juvenile Court. Section 81-28 states that when the Juvenile Court finds "that a live born infant has resulted from a voluntary abortion, such an infant has been abandoned." Sections 81-27 and 81-28, however, were struck down as unconstitutional in Wynn v. Carey, 599 F.2d 193 (7th Cir.1979) and Wynn v. Scott, 449 F.Supp. 1302 (N.D.Ill.1978) aff'd 599 F.2d 193 (7th Cir.1979). Both Carey and Scott held that an abortion is not an automatic termination of parental rights on the part of the mother for any fetus "born alive" as a consequence of the abortion. "All parents have constitutionally protected rights to have custody of and to care for their children.... They must have adequate notice that the state proposes to remove the children, and an opportunity to prove their fitness as parents at a hearing." Wynn v. Scott, 449 F.Supp. 1302, 1323 (N.D.Ill.1978); Wynn v. Carey, 599 F.2d 193, 195 (7th Cir.1979) see also Doe v. Rampton, 366 F.Supp. 189 (D.Utah 1973). The Illinois legislature nonetheless reenacted sections 81-27 and 81-28 in HB 1399. The precarious history of these statutes suggests that IPC's reliance on these statutes as an indication that fetuses born alive after abortions will be automatically available for adoption is foolhardy.
 
 
 22
 Even assuming some women will give up their aborted fetus for adoption, there would be few fetuses for IPC members to adopt. Women having abortions which result in fetuses "born alive" will be few because over ninety percent of all abortions are performed during the first trimester of pregnancy, the aborted fetuses of which will not be "born alive." Henshaw & O'Reilly, Characteristics of Abortion Patients in the United States, 1979 & 1980, 15 FAMILY PLANNING PERSPECTIVES 10 (1983). IPC tacitly acknowledges this fact by focusing on the likelihood of fetuses being born alive after 21 weeks, or during the third trimester, when Illinois women cannot have abortions unless necessary to preserve their life or health. IPC also acknowledges that live birth abortions are relatively few, amounting only to perhaps "400 to 500 abortion live births per year in the United States." IPC Br. at 14, (quoting Jeffries & Edmonds, Abortion: The Dreaded Complication, The Philadelphia Inquirer, Aug. 2, 1981 at 14, col. 2.). Finally, even assuming that some Illinois women will produce a live fetus after an abortion and choose to give up the child for adoption, the outcome of this litigation will have no bearing on IPC's members' ability to adopt such a child. IPC's members will have to attempt such an adoption pursuant to the regulations and laws of the state of Illinois, with which this litigation is unconcerned. Therefore, IPC cannot through this lawsuit protect any interest its members might have in adopting such children.
 
 
 23
 In summary, then, IPC has presented no direct and substantial interest that can be secured by its participation in this lawsuit. Neither its interests as lobbyist, guardian of fetal rights, nor potential adoptive parents of adopted fetus "born alive," either separately or together, support its right to intervene in this lawsuit. The district court's finding that IPC failed to establish a significant, legally protectable interest is, therefore, affirmed.
 
 III
 
 24
 IPC also appeals the district court's denial of permissive intervention under Rule 24(b). Permissive intervention is wholly discretionary with the district court and will be reversed on appeal only for an abuse of discretion. United States v. 36.96 Acres, 754 F.2d 855 (7th Cir.1985). The district court denied permissive intervention because no statute of the United States conferred a conditional right to intervene and because IPC had "no direct claim or right in the case before the court." Plaintiffs' Ex.A. at 3-4. The court also denied intervention in order "to avoid any possible undue delay or prejudice to the parties." Plaintiffs' Ex.A. at 3-4. The district court did not abuse its discretion in so ruling and we therefore affirm its denial of permissive intervention.
 
 
 25
 In conclusion, for the reasons stated above, the district court's orders denying IPC intervention as of right and permissive intervention are affirmed.
 
 
 26
 AFFIRMED.
 
 
 27
 CUDAHY, Circuit Judge, concurring in the result.
 
 
 28
 I dissented in United States v. 36.96 Acres of Land, 754 F.2d 855 (7th Cir.1985), to which the majority refers. This was a decision which, though perhaps defensible on narrowly technical grounds, excluded the one party--the Save the Dunes Council--which had a clear commitment to the acquisition of Crescent Dune for the Indiana Dunes National Lakeshore (which was the subject of the lawsuit). That the Department of the Interior, the agency charged with the duty of conducting that suit, had any such commitment was at best dubious on the record as presented.
 
 
 29
 The case before us is not so clear; the named defendants appear to be adequately defending HB 1399. But in some ways this case presents issues similar to those presented in 36.96 Acres. The Illinois Pro-Life Coalition has an intense and expert interest in the issues involved in this litigation. As the majority notes, the Coalition, like the Save the Dunes Council, is a "lobbyist," although I see nothing pejorative in the use of that term in the present context. In fact, its use suggests to me that the public interest organization in question knows enough and cares enough about the issues involved to litigate them productively.
 
 
 30
 I agree with the Coalition that the interest factor must be broadly construed in "public" cases like this one. The majority has been good enough to cite the authority, both scholarly and judicial, for that proposition. But I do not agree with the majority that IPC's interests are more attenuated than those asserted by the Save the Dunes Council, and are insufficient to support intervention. The fact that IPC cannot be an original defendant to the constitutional challenge to HB 1399 does not entail that it does not have standing to intervene. See 36.96 Acres, 754 F.2d at 860-862 (Cudahy, J., dissenting) (citing cases). The interest in adopting live-born fetuses had by some members of IPC seems to me to be comparable to the interest in using acreage added to the Indiana Dunes National Lakeshore had by members of the Save the Dunes Council. Here it is important that the Council has a special concern for fetuses that survive abortion and stand in need of adoption. It is impossible to overstate the fundamental importance of this and related issues of life and death in this case.
 
 
 31
 There has been no showing that this lawsuit would be in any way encumbered by allowing the Council to intervene. The public interest in wise resolution of difficult and important issues presented by this lawsuit would clearly be furthered by such participation. However, since the defense of HB 1399 has not been shown to be inadequate, I am constrained to concur in the result; the circumstances here, although highly persuasive, are not sufficiently compelling to mandate intervention as of right.