**AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, et al., Plaintiffs–Appellees,**

v.

**The CITY OF CHICAGO, et al., Defendants,**

and

**Chicago Journeymen Plumbers' Local Union 130, U.A., Proposed Intervening Defendant–Appellant.**

No. 88–1639.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 9, 1988.

Jan. 9, 1989.

Howard L. Mocerf, Borovsky, Ehrlich & Kronenberg, Chicago, Ill., for defendant-appellant.

Kenneth C. Shepro, Altheimer & Gray, Jeffery Smith, Asst. Corp. Counsel, Chicago, Ill., for plaintiffs-appellees.

Before CUMMINGS, WOOD, Jr., and CUDAHY, Circuit Judges.

CUMMINGS, Circuit Judge.

The Chicago Journeymen Plumbers' Local Union 130, U.A. ("Union") appeals the district court's denial of the Union's motion for leave to intervene as of right as a party defendant pursuant to Federal Rule of Civil

Procedure 24(a)(2).[1] We affirm for the reasons that follow.

The underlying suit involves a dispute between real estate developers, property owners, and construction contractors as plaintiffs ("Developers") against the City of Chicago and its Commissioner of Inspectional Services. The Developers wish to use polyvinyl chloride piping ("PVC") in the construction of waste, drain, vent, plumbing and piping in the construction of an urban renewal townhouse project known as Garibaldi Square and located on the near west side of Chicago. Section 82–69 of the City of Chicago Building Code, which regulates what materials may be used for such purposes, does not include PVC which is claimed to lower construction costs. The Developers attack the constitutionality of Section 82–69 and allege that the City acted unlawfully in awarding and then revoking a "variance" from the Code allowing them to use PVC. The Garibaldi Square project is not yet completely finished.

The Union is the collective bargaining representative of approximately 2,300 licensed journeymen and apprentice plumbers who engage in the installation of plumbing in and around the City of Chicago. As such, the Union asserts an interest in protecting the health and safety of its members, including the prevention of exposure to harmful substances and materials. The Union submits that the fabrication and installation of plumbing systems using PVC expose its members to significant health risks. The Union moved to intervene as a party defendant in this cause to support the Code section which bars this allegedly harmful material.

The district court held that the Union failed to meet any of the requirements of Rule 24(a)(2) except for timeliness. Thus the motion for leave to intervene was denied. This appeal followed. Though the underlying suit remains in the district court, this Court has jurisdiction of the instant appeal pursuant to 28 U.S.C. § 1291 providing for appeals from final decisions of district courts.

The only issue before this Court is whether the proposed intervenor met the requirements of Rule 24(a)(2). Rule 24(a)(2) establishes four criteria for intervention as a matter of right: (1) the motion must be timely; (2) the proposed intervenor must claim an interest relating to the property or transaction at issue; (3) the disposition of the action, as a practical matter, may impair or impede the ability to protect that interest; and (4) that interest is not adequately represented by existing parties. See note 1, *supra.* Whether the motion for leave to intervene was timely filed is not contested. The proposed intervenor has the burden of proving each element, and lack of even one element requires denial of the motion. *Keith v. Daley,* 764 F.2d 1265 (7th Cir.1985), certiorari denied, 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336.

*Interest*

This Court has held that the interest necessary to satisfy Rule 24(a)(2) must be "a direct, significant legally protectable interest." *Wade v. Goldschmidt,* 673 F.2d 182, 185 (7th Cir.1982) (citing *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971)); *United States v. 36.96 Acres of Land,* 754 F.2d 855, 858 (7th Cir.1985), certiorari denied, 476 U.S. 1108, 106 S.Ct. 1956, 90 L.Ed.2d 364 (1986); *Bethune Plaza, et al. v. Lumpkin, et al.,* 863 F.2d 525, 530 (7th Cir. 1988).[2] The Union asserts three interests

---

**1.** Rule 24(a)(2) provides in pertinent part:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

**2.** The Union argues that its interest need not be direct provided that it might be impaired by the outcome of the suit. *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 135–136, 87 S.Ct. 932, 936–937, 17 L.Ed.2d 814 (1967). The Union reads too much into *Cascade.* In *Meridian Homes Corp. v. Nicholas W. Prassas & Co.,* 683 F.2d 201, 203–204 (7th Cir. 1982), this Court found that *Cascade* mandated a liberal construction of "interest." However, consistent with the Supreme Court's subsequent

in attempting to satisfy this requirement: (1) to protect the health and safety of its members who would be exposed to PVC; (2) to protect the health and safety of the citizens of Chicago; and (3) to lend its expertise to the district court.

 With respect to the latter two interests, the Union clearly fails to meet the Rule 24(a)(2) requirements. The protection of the citizens of Chicago is the same interest asserted by the defendant City and is adequately represented by it. Further, the fact that the Union may have a particular expertise is no ground for mandatory intervention. If it were, every potential expert witness would meet the interest requirement. This Court has held that a group's particular expertise by itself is insufficient to meet the interest requirement. See, *e.g., Keith,* 764 F.2d at 1270 (see also Cudahy, J., concurring in the result) (Illinois Pro-Life Coalition denied intervention as of right despite "intense and expert interest in the issues involved in this litigation" (764 F.2d at 1272)); *United States v. 36.96 Acres of Land,* 754 F.2d at 859.

 Finally, the interest of the Union in protecting the health and safety of its members also fails to meet the interest requirement. The Union asserts that this interest is more particularized than the City's interest in protecting the citizens of Chicago generally. The Union argues that the district court erred in equating the Union's narrow interest of protecting its members' health with the City's general interest in protecting the public from faulty plumbing.

The critical issue here is not the specificity or generality of the interest, but rather whether the Union's interest is a direct, significant legally protectable interest. We conclude that it is not. At issue in this suit is the constitutionality of Section 82–69 of the City of Chicago Building Code and the propriety of the *revocation of a variance* therefrom. The interest alleged is the protection of the health and safety of plumbers. Even if the code section were found unconstitutional, and even if the revocation

of the variance were found improper, the Union's interest is unaffected. An outcome adverse to the Union's position merely means that PVC would be available for use in construction projects. It would in no way mandate that the Union's members would be forced to work with PVC. This would be left to independent contract negotiations. Consequently the Union has failed to show a direct, legally protectable interest.

This case is similar to that of *Wade v. Goldschmidt,* 673 F.2d 182 (7th Cir.1982). In *Wade,* property owners brought an action against the State of Illinois and the United States Department of Transportation challenging the proposed construction of an expressway and bridge across their property. The proposed intervenors, a nonprofit corporation formed specifically to support construction of the proposed bridge and expressway, asserted various interests including economic and safety interests. This Court held that because of the narrow question before the district court—whether the Department of Transportation's actions were arbitrary, capricious, or an abuse of discretion—"[n]one of the actions taken, nor the statutory authority called into question in this case, involves the proposed intervenors who seek to intervene as defendants." *Wade,* 673 F.2d at 185. Similarly here, the district court must determine whether Section 82–69 is arbitrary and whether it bears a rational relationship to its purpose. The district court is not concerned with the relative merits of PVC. Thus the Union has no direct, legally protectable interest.

### Ability to Protect Interest Impaired or Impeded

 Because the Union has failed to assert a direct, legally protectable interest, it follows that it has failed to assert an interest that could be impaired or impeded by the district court proceedings. *Wade,* 673 F.2d at 186. "The existence of 'impairment' depends on whether the decision of a legal question involved in the action would

pronouncement in *Donaldson,* "a direct and substantial, and therefore legally protectable, interest" is required. *Id.* at 204; *Donaldson,* 400 U.S. at 531, 91 S.Ct. at 542.

as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir.1982). The possibility of foreclosure is measured by the standards of *stare decisis.* Id.

The Union does not argue that the outcome of this litigation will affect any contracts to which its plumbers are currently bound. If the result of this litigation is to lift the ban on PVC, the Union's interest may be affected, but is still not impaired. All this result would mean is that PVC would be an available building material, among many others, from which developers could choose to build. The Union argues that, as a practical matter, it will have no ability to prevent the use of PVC. This may be so; but neither can the Union's members be forced to work with it. That is a matter for independent contract negotiation. The Union's ability to contract freely will not be impaired or impeded by the outcome of this litigation. In any event, *stare decisis* effects do not satisfy Rule 24(a)(2) where as here participation as an *amicus curiae* would suffice. *Bethune Plaza, et al. v. Lumpkin, et al.*, 863 F.2d 525, 533 (7th Cir.1988).

*Adequacy of Representation*

█ Finally, the Union has failed to show that the City does not adequately represent its interests. This Court has held that "[a]dequacy [of representation] can be presumed when the party on whose behalf the applicant seeks intervention is a governmental body or officer charged by law with representing the interests of the proposed intervenor." *Keith*, 764 F.2d at 1270 (citing *United States v. South Bend Community School Corp.*, 692 F.2d 623 (7th Cir.1982)); *Wade*, 673 F.2d at 186 n. 7.[3] The presumption arises here where the City is called on to defend the constitutionality of a section of its Building Code and the official action of one of its commissioners. Even assuming, *arguendo*, that the Union had made the requisite showing un-

der the other requirements of Rule 24(a)(2), it has failed to overcome the presumption of adequacy of representation. Yet, as in *Keith,* "we need not rely only on this presumption. The record in this case indicates that the named defendants charged by law with defending [this action] have adequately defended this suit." *Keith*, 764 F.2d at 1270.

The Corporation Counsel of Chicago is charged with the duty of defending the City's interests under both state and local law. Ill.Rev.Stat. ch. 24, ¶ 21–11 (1987); City of Chicago Municipal Code § 6–2. The Union argues that because of certain political considerations, the Corporation Counsel may be less than zealous in the defense of this cause. Acting Mayor Sawyer has supposedly proposed a resolution to the City Council which would permit the use of PVC in Chicago. Nevertheless, the Union has failed to make any concrete showing of inadequacy of representation. There is no showing that the Corporation Counsel might be less than zealous in defense of the ordinance in light of the alleged contrary interests of the Acting Mayor. Such speculation is wholly unsupported by the record which shows that the City is defending the ordinance. Thus the Union has also failed to carry its burden on the adequacy of representation prong of Rule 24(a)(2).

---

The district court correctly found that the Union failed to meet any of the requirements (other than timeliness) for intervention as of right under Rule 24(a)(2). Accordingly, the denial of the Union's Motion for Leave to Intervene is affirmed.

CUDAHY, Circuit Judge, concurring in the judgment:

I agree that this motion for intervention must fail on the ground that the City's representation is adequate. It is at least equally clear, however, that the Union does have a direct interest in the resolution of

---

3. This Court has also held that a presumption of adequacy of representation arises where the proposed intervenors and a party to the suit have the same ultimate objective. *Wade,* 673

F.2d at 186 n. 7. Though the Union argues that its interests are different than the City's, it has not demonstrated that its ultimate objective is different.

this controversy, which will be impaired or impeded by an unfavorable outcome of the suit. Unlike the environmental group applying to intervene in *United States v. 36.96 Acres of Land,* 754 F.2d 855 (7th Cir.1985), or the "right to life" organization seeking to participate in *Keith v. Daley,* 764 F.2d 1265 (7th Cir.1985), the Union here represents the individuals who would have to work with PVC if it were legalized and would immediately absorb any adverse health impacts associated with it. The Union, whose members will be installing PVC, has an interest at least as direct as the developers in whose projects PVC may be used. The Union's interest is quite different from that of a public interest group seeking to advance public policy goals. *See, e.g., Keith v. Daley,* 764 F.2d 1265 (7th Cir.1985); *United States v. 36.96 Acres of Land,* 754 F.2d 855 (7th Cir.1985). It is a disservice to the language to maintain that a union of employees who handle and install a building material alleged to be a threat to their health do not have a "direct interest" in whether they will be required to handle the material.

This case is different from *Wade v. Goldschmidt,* 673 F.2d 182 (7th Cir.1982), which involved a non-profit group organized to support construction of a bridge. There is nothing in *Wade* to suggest an immediate threat to the plaintiff group if the bridge were not built. In this respect, I do not agree that a statutory challenge under the arbitrary and capricious standard to the actions of a federal agency (as in *Wade*) bears much resemblance to the constitutional challenge under the rational relationship test in the case before us.

The majority argues that the Union members would not be "forced" to work with PVC even if the City loses in this suit. There seems to me no basis for this assertion; the Union's bargaining power may well be inadequate to prevent the use of PVC in the jobs they work if it were legalized.

By the same token, it is entirely reasonable to conclude that the Union's ability to preclude the use of PVC will be impaired and impeded if the City loses this lawsuit.

The majority claims that the Union's capacity to "contract freely" will not be affected by the outcome of this action. That the Union will have to rely on a bargaining power of unknown strength instead of on the clear-cut provisions of the Building Code seems to me as a practical matter to impair its ability to protect its interest. By losing the protection of the Building Code section the Union loses its first and probably strongest line of defense.

Despite the strength of its position on the "direct interest" and "impairment of interest" prongs of its intervention argument, the Union falls short on the "adequacy of representation" prong. There is no doubt some difference in terms of immediacy between the Union's health interest and the general public interest in health. But this is not a difference sufficient to overcome the presumption that a governmental body can adequately defend the validity of its laws and thereby fully represent the public interest. In general, we need not take account of all the political cross-currents in measuring the adequacy of representation by a governmental body. These cross-currents might become sufficient to throw the presumption of adequacy into doubt in some circumstances, but those circumstances do not appear to be present here.