In re Saul FOOS, Debtor.

BERGER, SHAPIRO & DAVIS, P.A.,
a Florida professional services
corporation, Plaintiff,

v.

William HAELING; Saul Foos; Marc Michaels Interior Design, Inc., a Florida corporation; Addison Development Group, Inc., a Florida corporation; New Venture, a Florida joint venture; NGN, Inc., a Florida corporation; and EWI, Inc., a Florida corporation, Defendants.

Bankruptcy No. 93 B 25069.
Adv. No. 94 A 1168.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

June 16, 1995.

**152**

Daniel A. Zazove, Barbara L. Yong, Micah R. Krohn, Barbakoff, Zazove & Glick, Chtd., Chicago, IL, for trustee William Brandt, Jr.

Dean C. Harvalis, Asst. U.S. Trustee, Dept. of Justice, Chicago, IL, for U.S. Trustee.

Larry M. Wolfson, Jenner & Block, Chicago, IL, for Saul Foos, debtor-co-defendant.

George Collins, Collins & Bargione, Chicago, IL, for William Haeling, defendant.

Thomas L. Abrams, Kenneth W. Shapiro, Berger, Shapiro & Davis, Ft. Lauderdale, FL, Janie Locke Anderson, Miami, FL, Barry A. Chatz, Kamensky & Rubinstein, Lincolnwood, IL, David E. Springer, Steven E. Boyce, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for plaintiff.

*MEMORANDUM OPINION*

RONALD BARLIANT, Bankruptcy Judge.

## I. INTRODUCTION

The Debtor, Saul Foos, ran a "Ponzi scheme" with considerable success until its inevitable collapse resulted in this involuntary chapter 7 bankruptcy case. This adversary proceeding is an interpleader action to determine the entitlement to funds that are proceeds of one of the Debtor's deceits. The present motion is by Skadden, Arps, Slate, Meagher & Flom to intervene on the grounds that Skadden was the beneficiary of a constructive trust of which those funds constituted the res. Based on its constructive trust theory, Skadden claims an equitable interest in, and therefore a superior right to, the funds. But in this Court's view, a constructive trust (under both federal and Illinois law) is a remedy, not a real trust, that does not confer any property interest on the alleged "beneficiary" until a court has decreed that relief. A bankruptcy court may not grant that relief, at least on the facts here, even assuming that Skadden has alleged grounds for the imposition of a constructive trust. Because no pre-bankruptcy judgment imposed a constructive trust, Skadden has alleged no interest in the funds. Skadden's motion will therefore be denied.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and (O).

## III. SKADDEN'S ALLEGATIONS

"In evaluating [a] motion to intervene, the [bankruptcy or] district court must accept as true the non-conclusory allegations of the motion and the [counterclaim]." *Lake Investors Dev. Group, Inc. v. Egidi Dev. Group*, 715 F.2d 1256, 1258 (7th Cir.1983). Accordingly, Skadden's allegations (except its conclusions) are, for purposes of this motion, taken as the facts of the case.

Saul Foos has admitted defrauding dozens of people after earning their trust as a lawyer, agent, and advisor. This motion involves one of the Debtor's frauds. For legal services rendered, Janet McGrath executed a $270,000 promissory note in favor of Skadden. The note was secured by a mortgage on real property in New Jersey and Connecticut. By October 27, 1993, McGrath owed Skadden at least $351,417.52, including interest.

In order to reduce her obligation to Skadden, McGrath promised that she would turn over the proceeds from the first sale of her real property holdings. The Debtor, Mr. Foos, was McGrath's lawyer and agent in connection with her real estate holdings. In February 1993, McGrath sold property in New York and instructed the Debtor to pay the proceeds to Skadden. The Debtor did not do so. Instead, he deposited the sale proceeds in an account at an Illinois bank, where they were commingled with other funds.[1] To hide his diversion of the funds, the Debtor falsely told Skadden that the sale had not occurred. Skadden did not learn of the closing until after the commencement of this bankruptcy case in November 1993.

The Trustee provided Skadden with a schedule of payments the Debtor made from the bank account. These payments were made prior to the filing of the petition and prior to the time the Debtor's account had a zero balance. Among the payments were two, on November 8 and 12, 1993, totaling $157,000 to the Florida law firm of Berger, Shapiro & Davis, P.A., for the benefit of one of its clients, William Haeling. Skadden alleges that it can trace the sale proceeds that its client had instructed the Debtor to pay to Skadden to the payments to the Florida law firm.

## IV. PROCEDURAL BACKGROUND

On November 24, 1993, the Florida law firm filed this interpleader action in a Florida state court to resolve competing claims to those funds by Mr. Haeling and others. Mr. Foos was one of the named defendants. On November 30, 1993, creditors of Mr. Foos filed an involuntary petition against him for relief under chapter 7 of the bankruptcy code. Shortly thereafter, with the Debtor's consent, this Court entered an order for relief under chapter 7. This Court approved the election of William A. Brandt as Trustee of the chapter 7 estate on March 2, 1994. Mr. Foos, therefore, has no further interest in this litigation. The ultimate question now is which of his innocent creditors will get the benefit of the disputed funds, Skadden alone or all the unsecured creditors.

On March 4, 1994, the Trustee filed a notice of removal with the United States Bankruptcy Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1334(b) and 1452(a) and Federal Rule of Bankruptcy Procedure 9027 to remove the interpleader action from the Florida state court to the Bankruptcy Court for the Southern District of Florida, and the interpleader action was removed. The Trustee then moved for a change of venue to this Court, which was granted on June 13, 1994. On February 6, 1995, Skadden filed the motion currently before the Court, seeking to intervene as a defendant in the interpleader adversary proceeding, to assert an answer to the complaint, and to file a counterclaim. It is in those pleadings that Skadden lays out its claim to sole entitlement to the funds. The Trustee opposes the motion, claiming the funds belong to the estate, to be distributed among all creditors.

## V. ISSUES AND SUMMARY OF COURT'S CONCLUSIONS

It is Skadden's position that it, not the estate, owns the funds. Skadden maintains that the funds are the subject of a constructive trust. It claims that, as the "beneficiary" (*i.e.*, the defrauded entity) of the constructive trust, it has a property interest in the "res" (*i.e.*, the proceeds of the fraud), and that the "constructive trustee" (*i.e.*, the perpetrator of the fraud or his successor in interest to the "res") has no more than a bare legal interest in that property. On this analysis, Skadden contends, this fund is excluded from the estate by virtue of § 541(d)

---

1. The Trustee maintains that the other funds consisted of the proceeds of other frauds. For our purposes, the source of the other funds is not significant.

**154**

of the bankruptcy code, which excludes from bankruptcy estates equitable interests in trust property in which the debtor has only a legal interest.

The Trustee, on the other hand, denies that this fund is the subject of a constructive trust. He argues that the imposition of a constructive trust would be contrary to the bankruptcy code's provisions for distribution of assets to unsecured creditors on an equitable basis. Awarding the funds to Skadden would obviously give it a greater proportionate return on its claim than other creditors would receive. Of course, Skadden says that it would only be getting its own property back, but the Trustee cites authorities that hold that constructive trusts have no place in bankruptcy and the property at issue is property of the estate. *See, e.g., XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.),* 16 F.3d 1443, 1452 (6th Cir.1994) ("Constructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, not from the offending debtor").

■■■ This Court is persuaded by the insightful reasoning of the Sixth Circuit in *In re Omegas Group* and Professor Emily L. Sherwin in *Constructive Trusts in Bankruptcy,* 1989 U.ILL.L.REV. 297 (hereinafter "Sherwin"). These authorities (and others cited below) demonstrate that a "constructive trust" is a remedy for unjust enrichment, not a real trust. Therefore, the existence of grounds for imposition of a constructive trust does not lead to the conclusion that the "beneficiary" has an equitable, or any other, interest in the property; rather, the "beneficiary" has a particular remedy for a legal wrong. If that remedy is granted, then the "beneficiary" has a right to immediate possession and ownership of the "res." *See Suttles v. Vogel,* 126 Ill.2d 186, 193, 127 Ill. Dec. 819, 822, 533 N.E.2d 901, 904 (1988) ("The sole duty of the constructive trustee is to transfer title and possession of the wrongfully acquired property to the beneficiary"). But in a bankruptcy case filed before another court has imposed a constructive trust, the "beneficiary" is merely an unsecured creditor, with no interest in the disputed property.

Moreover, Denial of Skadden's motion is compelled by Illinois law, which is applicable here.[2] The Illinois Supreme Court has treated constructive trust as a remedy, not a trust. *See Suttles,* 126 Ill.2d at 193, 127 Ill.Dec. at 821, 533 N.E.2d at 904 ("A constructive trust is created when a court declares the party in possession of wrongfully acquired property as the constructive trustee of that property"); *Washburn v. Dyson (In re Security Casualty Co.),* 127 Ill.2d 434, 447, 130 Ill.Dec. 446, 452–53, 537 N.E.2d 775, 781–82 (1989) ("A constructive trust is an equitable remedy imposed by a court to prevent the unjust enrichment of a party through actual fraud or breach of a fiduciary relationship"). So, no constructive trust yet having been imposed, Illinois courts would not treat Skadden as the owner of any interest in the funds. Moreover, the Illinois Supreme Court refused to impose a constructive trust that would have been in conflict with the priorities provided in a statutory liquidation scheme. *Id.* Chapter 7 of the bankruptcy code is just such a scheme.

## VI. ANALYSIS

### A. Intervention as of Right

■■■ Skadden has moved under Rule 24(a)(2) to intervene as of right.[3] A motion

---

**2.** Neither party has raised a conflict of laws or choice of law issue or objection. Moreover, wherever the parties do refer to state law, it is the substantive law of Illinois. In the absence of a choice of law objection, the Court will apply the substantive law of Illinois to those issues governed by non-bankruptcy law. *See Wood v. Mid-Valley, Inc.,* 942 F.2d 425, 426 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue [where the federal court must apply state law], the federal court simply applies the law of the state in which the federal court sits"); *accord, Employers Ins. of Wausau v. Bodi-Wachs Aviation Ins. Agency, Inc.,*

39 F.3d 138, 141 n. 2 (7th Cir.1994); *Johnson v. Gudmundsson,* 35 F.3d 1104, 1113 n. 6 (7th Cir.1994); *Almar Communications, Ltd. v. Telesphere Communications, Inc. (In re Telesphere Communications, Inc.),* 167 B.R. 495, 502 n. 4 (Bankr.N.D.Ill.1994).

**3.** FED.R.CIV.P. 24, which applies to adversary proceedings by virtue of FED.R.BANKR.P. 7024, provides in pertinent part:

  (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims

to intervene as of right "should not be [denied] unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint [or counterclaim]." *Lake Investors,* 715 F.2d at 1258. In order to intervene as of right, a movant must demonstrate four elements:

> (1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action.

*Shea v. Angulo,* 19 F.3d 343, 346 (7th Cir. 1994) (quoting *Southmark Corp. v. Cagan,* 950 F.2d 416, 418 (7th Cir.1991)); *Midway Airlines, Inc. v. Northwest Airlines, Inc. (In re Midway Airlines, Inc.),* 154 B.R. 248, 252 (N.D.Ill.1993). The movant has the burden of establishing all four elements. *Keith v. Daley,* 764 F.2d 1265, 1268 (7th Cir.), *cert. denied sub nom. Illinois Pro–Life Coalition, Inc. v. Keith,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985).

■ The Trustee denies that Skadden has sufficiently alleged the second element ("an interest relating to the subject matter of the action"), and that will be the focus of our discussion. In determining whether a movant has demonstrated the requisite interest in the subject matter of the action, a court should define "interest" broadly. *Lake Investors,* 715 F.2d at 1259; *Meridian Homes Corp. v. Nicholas W. Prassas & Co.,* 683 F.2d 201, 203–04 (7th Cir.1982) (both relying on *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967)). Nevertheless, the movant must demonstrate a significantly protectable interest (*Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971)); a legally protectable interest (*Keith,* 764 F.2d at 1268; *United States v. 36.96 Acres of Land,* 754 F.2d 855, 858 (7th Cir.1985), *cert. denied sub nom. Save the Dunes Council, Inc. v. United*

*States,* 476 U.S. 1108, 106 S.Ct. 1956, 90 L.Ed.2d 364 (1986)); and a direct and substantial interest (*36.96 Acres of Land,* 754 F.2d at 858; *Lake Investors,* 715 F.2d at 1259; *Meridian Homes,* 683 F.2d at 204)).

■ Furthermore, the interest "must be based on a right that belongs to the proposed intervenor rather than to an existing party in the suit." *Keith,* 764 F.2d at 1268 (citation omitted). An interest is significantly protectable if it states a legally cognizable claim. *United States v. City of Chicago,* 798 F.2d 969, 976 n. 10 (7th Cir.1986), *cert. denied sub nom. O'Sullivan v. United States,* 484 U.S. 1041, 108 S.Ct. 771, 98 L.Ed.2d 858 (1988). An interest is direct if it is "so direct that the applicant would have 'a right to maintain a claim for the relief sought.'" *Keith,* 764 F.2d at 1268 (citation omitted). Therefore, in order to determine whether an interest is sufficient for purposes of Rule 24(a)(2), a court must consider the legal validity, cognizableness, and sufficiency of the movant's underlying claim.

## B. Constructive Trusts in Bankruptcy

### 1. Applicable Bankruptcy Law

■ The filing of a petition under chapter 7 of the bankruptcy code creates an estate comprised of property described in 11 U.S.C. § 541(a). Most important, the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Notwithstanding this broad definition of what constitutes property of the estate, some property interests do not become part of the estate. Specifically, "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, ... becomes property of the estate under subsection (a)(1) or (2) of this section *only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the*

---

an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or

impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

*debtor does not hold."* 11 U.S.C. § 541(d) (emphasis supplied).[4]

■■■■■ Section 541(d) describes the classic trust situation: a trustee holds bare legal title to property for the benefit of, and owes duties to, one or more beneficiaries who hold the equitable title or interest in the trust property or res. *Official Committee of Unsecured Creditors of Columbia Gas Transmission Corp. v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 997 F.2d 1039, 1059 (3d Cir.1993), *cert. denied,* —— U.S. ——, —— – ——, 114 S.Ct. 1050, 1050–51, 127 L.Ed.2d 372 (1994). This separation or division of the legal and equitable titles or interests is one of the hallmarks of a trust relationship. Where the debtor's interest in property is limited to that of a trustee, no other interest (specifically, the beneficiary's equitable interest) in that property becomes part of the estate. *Id.* That is, "where the debtor holds bare legal title without an equitable interest, the estate acquires bare legal title without any equitable interest." *N.S. Garrott & Sons v. Union Planters Nat'l Bank of Memphis (In re N.S. Garrott & Sons),* 772 F.2d 462, 466 (8th Cir.1985).

■■■■ Express trusts are obviously within § 541(d)'s ambit. The issue here is whether an interest in property allegedly held in constructive trust is also excluded from the estate by § 541(d). There is certainly authority that says it is. *See, e.g., Connecticut Gen. Life Ins. Co., v. Universal Ins. Co.,* 838 F.2d 612, 618 (1st Cir.1988) (where property is subject to a constructive trust, the debtor's estate "holds the property subject to the outstanding interest of the beneficiaries"). There is legislative history that supports this conclusion.[5] *Columbia Gas Systems,* 997 F.2d at 1059 ("Congress clearly intended the exclusion created by section 541(d) to include not only funds held in express trust, but also funds held in constructive trust"); *T & B Scottdale Contractors, Inc. v. United States,* 866 F.2d 1372, 1376 (11th Cir.) (the legislative history "makes it clear that funds in the debtor's possession held for a third-party do not become part of the estate in bankruptcy"), *cert. denied sub nom. Ellenberg v. T & B Scottdale Contractors, Inc.,* 493 U.S. 846, 110 S.Ct. 139, 107 L.Ed.2d 98 (1989). Legislative history, however, does not have the force of law. And "[n]owhere in the Bankruptcy Code does it say 'property held by the debtor subject to a constructive trust is excluded from the debtor's estate.'" *Omegas Group,* 16 F.3d at 1448.

The defect in the reasoning of the courts that apply § 541(d) to constructive trusts is that most of those courts beg the question: they treat constructive trusts as if they are the same as express trusts, with the same division of property interests, and then go on to apply the same law they would apply to express trusts.[6] But not all courts take that

---

4. The Seventh Circuit has suggested a narrow definition of § 541(d). *Belisle v. Plunkett,* 877 F.2d 512, 515–16 (7th Cir.), *cert. denied sub nom. Belisle v. Anzivino,* 493 U.S. 893, 110 S.Ct. 241, 107 L.Ed.2d 191 (1989). And arguably § 541(d) does no more than clarify § 541(a), which, by its terms, includes only the debtor's property interests in the estate. For purposes of this opinion, however, we can assume a broad reading of § 541(d). The result is not affected because Skadden simply does not have an "equitable interest" in the property involved here.

5. The legislative history provides in pertinent part:

Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in constructive trust for the person to whom the bill was owed.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 368 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 5787, 5868, 6324.

6. *See, e.g., Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.),* 13 F.3d 321, 324–25 (9th Cir.1994); *Goldberg v. New Jersey Lawyers' Fund for Client Protection,* 932 F.2d 273, 280 (3d Cir.1991); *Sanyo Elec., Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.),* 874 F.2d 88, 93 (2d Cir.1989); *T & B Scottdale Contractors, Inc. v. United States,* 866 F.2d 1372, 1376 (11th Cir.), *cert. denied,* 493 U.S. 846, 110 S.Ct. 139, 107 L.Ed.2d 98 (1989); *Connecticut Gen. Life Ins. Co. v. Universal Ins. Co.,* 838 F.2d 612, 618 (1st Cir.1988); *Turley v. Mahan & Rowsey, Inc. (In re Mahan & Rowsey, Inc.),* 817 F.2d 682, 684 (10th Cir.1987); *Drabkin v. Midland–Ross Corp. (In re Auto–Train Corp.),*

approach. The Sixth Circuit has held that "a constructive trust is not really a trust. A constructive trust is a legal fiction, a common-law remedy in equity that may only exist by the grace of a judicial action." *Omegas Group,* 16 F.3d at 1449; *accord, Torres v. Eastlick (In re North American Coin & Currency, Ltd.),* 767 F.2d 1573, 1575 (9th Cir.) ("A constructive trust is not the same kind of interest in property as a joint tenancy or a remainder. It is a remedy, flexibly fashioned in equity to provide relief where a balancing of interests in the context of a particular case seems to call for it"), *opinion amended,* 774 F.2d 1390 (1985), *cert. denied,* 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986).

■ Our problem, therefore, is to define Skadden's interest in the funds that are the subject matter of this action. The bankruptcy code does not define a debtor's interests in property; it says only that those interests, whatever they are, become property of the estate. *Universal Cooperatives, Inc. v. FCX, Inc. (In re FCX, Inc.),* 853 F.2d 1149, 1153 (4th Cir.1988), *cert. denied,* 489 U.S. 1011, 109 S.Ct. 1118, 103 L.Ed.2d 181 (1989). "[P]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). A particular state law will continue to apply in this context until there is "actual conflict with the system provided by the Bankruptcy [Code] of Congress." *Id.* at 54–55 n. 9, 99 S.Ct. at

918 n. 9.[7] So defining Skadden's interest requires a review of Illinois law.

### 2. The Illinois Law of Constructive Trusts

■ Although constructive trusts owe their genesis to express trusts, the two share few, if any, common attributes. *See* 5 AUSTIN WAKEMAN SCOTT & WILLIAM FRANKLIN FRATCHER, THE LAW OF TRUSTS § 461 (4th ed. 1989) ("the differences between the express trust and the constructive trust are greater than the similarities").

> The requirements of a valid express trust include (1) intent of the parties to create a trust, which may be shown by a declaration of trust by the settlor or by circumstances which show that the settlor intended to create a trust; (2) a definite subject matter or trust property; (3) ascertainable beneficiaries; (4) a trustee; (5) specifications of a trust purpose and how the trust is to be performed; and (6) delivery of the trust property to the trustee.

*In re Estate of Zukerman,* 218 Ill.App.3d 325, 329, 161 Ill.Dec. 121, 124, 578 N.E.2d 248, 251 (1st Dist.), *appeal denied,* 142 Ill.2d 654, 164 Ill.Dec. 929, 584 N.E.2d 141 (1991). Express trusts are based on the settlor's intent and an agreement between the settlor and the trustee, and do not require judicial action for their existence. *Williams v. Rock River Sav. and Loan Ass'n,* 51 Ill.App.2d 5, 15, 200 N.E.2d 848, 853 (2d Dist.1964); *see also La Throp v. Bell Fed. Sav. & Loan Ass'n,* 68 Ill.2d 375, 381, 12 Ill.Dec. 565, 568, 370 N.E.2d 188, 191 (1977) (the expressed intention to create a relationship constituting a trust is critical to creation of a trust), *cert. denied,* 436 U.S. 925, 98 S.Ct. 2818, 56

---

810 F.2d 270, 275 (D.C.Cir.1987); *Mid–Atlantic Supply, Inc. of Virginia v. Three Rivers Aluminum Co. (In re Mid Atlantic Supply Co.),* 790 F.2d 1121, 1126 (4th Cir.1986); *N.S. Garrott & Sons v. Union Planters Nat'l Bank of Memphis (In re N.S. Garrott & Sons),* 772 F.2d 462, 467 (8th Cir. 1985).

7. *See Omegas Group,* 16 F.3d at 1449–50; Sherwin at 317. *Omegas Group* was not specifically decided as a matter of state (*i.e.,* Kentucky) law, but on the basis of the "more general conclusion that, absent a specific state statute to the contrary, constructive trusts are not properly invoked to gain super-priority over the trustee in

bankruptcy...." *Omegas Group,* 16 F.3d at 1450 n. 7. But that "general conclusion" is based on the court's holding that "a constructive trust, unlike an express trust, is a remedy ... [and] does not exist until a plaintiff obtains a judicial decision" imposing that remedy. *Id.* at 1451. That holding is not a statement of bankruptcy law. In this case, however, it is not necessary to find the precise boundaries between state and federal law because, as we discuss below, Illinois law is in agreement with the Sixth Circuit's characterization of constructive trust as a remedy.

L.Ed.2d 768 (1978). The trustee then holds the legal title to the trust property for the benefit of the beneficiaries, who hold the equitable title to the trust property pursuant to the trust agreement. *Merchants Nat'l Bank of Aurora v. Frazier*, 329 Ill.App. 191, 200, 67 N.E.2d 611, 617 (2d Dist.1946); *see also Krensky v. DeSwarte*, 335 Ill.App. 435, 442, 82 N.E.2d 168, 171 (1st Dist.1948) (in an express trust, legal title is vested in the trustee and equitable title is vested in the beneficiary). The trustee has certain fiduciary duties with respect to the trust property that must be exercised in a manner consistent with the trust agreement. *Harris Trust and Sav. Bank v. Wanner*, 393 Ill. 598, 606, 66 N.E.2d 867, 871 (1946); *In re Estate of Halas*, 209 Ill.App.3d 333, 344, 154 Ill.Dec. 170, 178, 568 N.E.2d 170, 178 (1st Dist.1991); *accord Home Fed. Sav. and Loan Ass'n of Chicago v. Zarkin*, 89 Ill.2d 232, 239, 59 Ill.Dec. 897, 901–02, 432 N.E.2d 841, 845–46 (1982) ("The fiduciary obligation of loyalty flows not from the trust instrument but from the relationship of trustee and beneficiary. The essence of this relationship is that the former is charged with equitable duties toward the latter").

■■■ Illinois courts do not discuss constructive trusts in terms of ownership because, as an equitable remedy, constructive trust law is not concerned with ownership *per se*. Instead, a constructive trust is imposed where a court determines that the plaintiff has a better claim to property than the possessor based on equitable principles such as unjust enrichment.[8] In contrast to an express trust, a constructive trust arises by operation of law. *Suttles*, 126 Ill.2d at 193, 127 Ill.Dec. at 821, 533 N.E.2d at 904. A constructive trust is an equitable remedy. *Charles Hester Enters., Inc. v. Illinois*

*Founders Ins. Co.*, 114 Ill.2d 278, 293, 102 Ill.Dec. 306, 313, 499 N.E.2d 1319, 1326 (1986). "Some form of wrongdoing is a prerequisite to the imposition of a constructive trust." *Suttles*, 126 Ill.2d at 193, 127 Ill.Dec. at 822, 533 N.E.2d at 905; *see also Charles Hester*, 114 Ill.2d at 293, 102 Ill.Dec. at 313, 499 N.E.2d at 1326 ("Some form of wrongful or unconscionable conduct is a prerequisite to the imposition of a constructive trust").

■■■ Generally, a constructive trust is imposed upon a party in wrongful possession of property for two purposes: (1) to remedy wrongdoing either in the acquisition or possession of the property; and (2) to prevent both inequity to the rightful owner as well as unjust enrichment of the party in wrongful possession. *Suttles*, 126 Ill.2d at 193, 127 Ill.Dec. at 821, 533 N.E.2d at 904; *Charles Hester*, 114 Ill.2d at 293, 102 Ill.Dec. at 313, 499 N.E.2d at 1326. *See also Martin v. Heinold Commodities, Inc.*, 163 Ill.2d 33, 56, 205 Ill.Dec. 443, 454, 643 N.E.2d 734, 745 (1994) ("a constructive trust is imposed to prevent unjust enrichment by imposing a duty on the person receiving the benefit to convey the property back to the person from whom it was received"); *Lecrone v. Leckrone*, 220 Ill.App.3d 372, 379, 162 Ill.Dec. 814, 819, 580 N.E.2d 1233, 1238 (1st Dist.1991) ("A constructive trust is simply a restitutionary remedy which may be imposed to compel one who unfairly holds property to convey it to another to whom it justly belongs").

■■■ The consequences of the imposition of a constructive trust are straightforward. The party in wrongful possession of the property becomes an involuntary trustee, and "[t]he sole duty of the constructive trustee is to transfer title and possession of the wrongfully acquired [or possessed] property to the beneficiary." *Suttles*, 126 Ill.2d at 193, 127

---

8. We are concerned here with a claim of constructive trust to remedy unjust enrichment of the sort alleged by Skadden. There is another situation that may involve constructive trust as a remedy, but that really involves another basis for a claim to an ownership interest in the property:

> If the debtor possesses a stolen diamond ring, the real owner's rights would trump those of a judgment creditor, and under the Code therefore would defeat the claims of all of the debtor's creditors. Whether or not we say that the debtor holds the ring in "constructive trust"

for the owner is a detail. Under state law the owner's claims are paramount; the debtor could not defeat those rights by pledging or selling the ring, and the creditors in bankruptcy receive only what state law allows them. *Belisle*, 877 F.2d at 515. As this quotation demonstrates, the key question is the state law ownership right in the property at issue. Here, Skadden's only basis for claiming such a right is constructive trust as a remedy for fraud and unjust enrichment, not prior ownership and theft.

Ill.Dec. at 821, 533 N.E.2d at 904. The party in wrongful possession holds the property for the benefit of the party to whom the property justly belongs. *People ex rel. Hartigan v. Candy Club*, 149 Ill.App.3d 498, 502, 103 Ill.Dec. 167, 170, 501 N.E.2d 188, 191 (1st Dist.1986); *Sadacca v. Monhart*, 128 Ill. App.3d 250, 255, 83 Ill.Dec. 463, 467, 470 N.E.2d 589, 593 (1st Dist.1984). The trust claimant becomes the beneficiary and is entitled to recover possession of the trust property.

■ A further indication that constructive trust is a remedy is that it does not arise until a court decrees it. *Suttles*, 126 Ill.2d at 193, 127 Ill.Dec. at 821, 533 N.E.2d at 904 ("A constructive trust is created when a court declares the party in possession of wrongfully acquired [or possessed] property as the constructive trustee of that property").[9] *Cf. Omegas Group*, 16 F.3d at 1451 (a constructive trust "does not exist until a plaintiff obtains a judicial decision finding him to be entitled to a judgment 'impressing' defendant's property with a constructive trust"). In contrast, a resulting trust, like an express trust, comes into being independent of any judicial action. *First Nat'l Bank and Trust Co. of Rockford v. Illinois Nat'l Bank and Trust Co. of Rockford*, 19 Ill.2d 385, 388, 167 N.E.2d 223, 225 (1960) ("A *resulting trust* is based upon the presumed intention of the parties distilled from their conduct; it comes into being at the instant title vests, or not at all") (emphasis supplied).

The Illinois opinion that best demonstrates that constructive trust is an equitable remedy, not a true trust, is *Washburn v. Dyson (In re Security Casualty Co.)*, 127 Ill.2d 434, 130 Ill.Dec. 446, 537 N.E.2d 775 (1989), which involved the liquidation of an insurance company under the Illinois Insurance Code. Shareholders of the company alleged that funds they had paid should be subjected to a constructive trust in their favor, and thus excluded from the liquidation. The court recognized that "the effect of . . . imposing a constructive trust on [the insurance company's] estate for the benefit of the shareholder class, is to boost the shareholders' claims over those in the statutory priority ladder, granting the shareholders a super-priority ahead of all other claimants in the liquidation proceedings." *Security Casualty*, 127 Ill.2d at 444, 130 Ill.Dec. at 451, 537 N.E.2d at 780. The court reversed the trial court's imposition of a constructive trust, concluding that the funds at issue were the company's assets, subject to the statutory scheme for distribution to creditors. 127 Ill.2d at 446, 130 Ill. Dec. at 452, 537 N.E.2d at 781. The existence of the statutory scheme precluded the grant of inconsistent relief. "Because the legislature has provided a comprehensive statutory scheme governing the distribution of assets from a liquidated insurer's estate, equitable relief different from that provided by statute was not available. . . ." 127 Ill.2d at 447, 130 Ill.Dec. at 452, 537 N.E.2d at 781.

■ The analogy to this case is obvious: we too are involved in a liquidation under a statute that provides for the distribution of assets according to specified priorities. *See* 11 U.S.C. § 726. It is therefore fair to conclude that an Illinois court would refuse to impose a constructive trust in this case. But the decision in *Security Casualty* supports a broader conclusion: in Illinois, constructive trust is a remedy for unjust enrichment, not the basis of a claim to ownership. The court in *Security Casualty* rejected the shareholders' claim to an ownership interest in the funds; instead, the court viewed the issue as the availability of equitable relief in the face of the distribution statute. 127 Ill.2d at 447–48, 130 Ill.Dec. at 452–53, 537 N.E.2d at 781–82.

---

9. *See also Martin*, 163 Ill.2d at 78, 643 N.E.2d at 755–56 (" 'A constructive trust is solely the creature of a court of chancery and is established upon purely equitable grounds' ") (quoting *Miller v. Miller*, 266 Ill. 522, 531, 107 N.E. 821, 824 (1915)); *Eldridge v. Eldridge*, 246 Ill.App.3d 883, 889, 186 Ill.Dec. 818, 823, 617 N.E.2d 57, 62 (1st Dist.1993) ("A constructive trust is raised by operation of law and is created when a court finds that the party in possession of wrongfully acquired [or possessed] property is the constructive trustee of the property because it would be inequitable for that party to retain possession of the property"); *Pottinger v. Pottinger*, 238 Ill.App.3d 908, 916, 179 Ill.Dec. 116, 123, 605 N.E.2d 1130, 1137 (2d Dist.1992) (a constructive trust is "created when a court declares the party in possession of wrongfully acquired [or possessed] property as the constructive trustee of that property. . . .").

Illinois law is therefore fully consistent with Professor's Sherwin's analysis that it is a mistake to "equate the constructive trust claimant's rights against the debtor with equitable ownership ... [as if] the claimant has an equitable interest in the property she claims, which survives the commencement of bankruptcy proceedings." Sherwin at 315. This approach "reflects a misunderstanding of the remedial nature of constructive trusts" by assuming an ownership interest where none exists. Sherwin at 317, 339. The "mistake has been to treat the claimant's state law *remedy* as a right of equitable *ownership* for purposes of distribution in bankruptcy.... A constructive trust is not a right of ownership, but an equitable remedy against unjust enrichment." Sherwin at 317 (emphasis supplied). Therefore, "[u]nless a court has already impressed a constructive trust upon certain assets or a legislature has created a specific statutory right to have particular kinds of funds held as if in trust," (*Omegas Group,* 16 F.3d at 1449) the claimant has no property rights whatsoever. Rather, he merely has an unsecured claim against the debtor's estate.

This conclusion is also consistent with decisions in this Circuit. There is *dicta* in *Belisle v. Plunkett* that "[a] constructive trust ordinarily survives bankruptcy: the property may not be used to satisfy the debtor's obligations to other creditors...." *Belisle,* 877 F.2d at 513. But the authorities cited for that proposition do not support it. The Supreme Court's decision in *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) did not deal at all with constructive trusts, though it did note that funds held in trust pursuant to statute might be excluded from the estate. *Whiting Pools,* 462 U.S. at 205 n. 10, 103 S.Ct. at 2314 n. 10. The court in *Heyman v. Kemp (In re Teltronics, Ltd.),* 649 F.2d 1236 (7th Cir.1981) held only that the former bankruptcy act did not require a statutory receiver of the proceeds of consumer frauds to turn over those fund to a bankruptcy trustee. *Teltronics,* 649 F.2d at 1239 ("The bankruptcy rule simply does not apply to a receiver under the Consumer Fraud Act"). Here, there is no statute creating special rights in the disputed funds. *Belisle* itself

held only that a constructive trust claim was subject to the trustee's strong-arm powers to set aside certain interests under § 544(a)(3) of the bankruptcy code. Although that issue is not present in this case, the holding in *Belisle* supports the general point that there is little room for constructive trusts in bankruptcy.

Here, no constructive trust was judicially or statutorily imposed before bankruptcy. Yet the only entitlement to these funds asserted by Skadden is as the beneficiary of a constructive trust to remedy the Debtor's unjust enrichment. The Court concludes, based on the foregoing analysis, that Skadden has no equitable or other property interest in these funds. Its interest is indistinguishable from that of the other creditors, and that interest is really an interest in the estate, which is represented by the Trustee.

### 3. The Availability of the Constructive Trust Remedy Post–Bankruptcy

Even viewing constructive trust as a remedy, rather than a form of property right, however, it might still be appropriate to allow intervention to give Skadden a chance to convince this Court to impose that remedy. But intervention is not appropriate because this Court lacks the authority to grant that relief in a bankruptcy case. Alternatively, even if that authority existed, it should not be exercised in this case.

Chapter 7 provides for the distribution to creditors of the proceeds of the liquidation of estate assets in accordance with stated priorities among various classes of creditors. *See* 11 U.S.C. § 726. As we have seen, the imposition of a constructive trust creates a right in favor of the trust claimant to specific property. When property is removed from a bankruptcy estate, the effect is to give the trust claimant a super-priority, so that its claim is satisfied before those of other similarly situated creditors, and outside the statutory priority scheme. *In Matter of Haber Oil,* 12 F.3d 426, 436 (5th Cir.1994) ("Because the constructive trust doctrine can wreak such havoc with the priority system ordained by the Bankruptcy Code, bankruptcy courts are generally reluctant 'to impose construc-

tive trusts without a substantial reason to do so' ") (quoting *Neochem Corp. v. Behring Int'l, Inc. (In re Behring Int'l, Inc.)*, 61 B.R. 896, 902 (Bankr.N.D.Tex.1986)).

Nothing in the bankruptcy code authorizes the super-priority treatment of creditors whose only claim to such treatment is that they would be entitled to the remedy of the imposition of a constructive trust outside of bankruptcy. As a general rule, bankruptcy courts may not alter the statutory priorities. *Shapiro v. Saybrook Mfg. Co., Inc. (In re Saybrook Mfg. Co., Inc.)*, 963 F.2d 1490, 1495–96 (11th Cir.1992) ("Section 507 of the Bankruptcy Code fixes the priority order of claims and expenses against the bankruptcy estate. Creditors within a given class are to be treated equally, and bankruptcy courts may not create their own rules of superpriority within a single class") (citations omitted); *Transamerica Commercial Fin. Corp. v. Citibank, N.A. (In re Sun Runner Marine, Inc.)*, 945 F.2d 1089, 1094 (9th Cir.1991) ("To [pay certain pre-petition unsecured claims in full while other remain unpaid] would impermissibly violate the priority scheme of the Bankruptcy Code"); *In re FCX, Inc.*, 60 B.R. 405, 409–11 (E.D.N.C.1986) (court cannot alter distribution priorities absent inequitable conduct by claimant); *In re Baldwin–United Corporation, D.H.*, 43 B.R. 443, 457 (S.D.Ohio 1984) ("It is ... beyond travail that the most significant policy in bankruptcy jurisprudence is equality of treatment of like-situated creditors").

Courts that understand the significance of the bankruptcy filing have refused to impose constructive trusts post-bankruptcy. These courts recognize that the imposition of a constructive trust "creates a mechanism by which a creditor may attain a position roughly equivalent to a perfected security interest in proceeds without complying with the usual statutory formalities, ... and thus tends to undercut the statutory scheme." *Auto–Train*, 810 F.2d at 275. *Accord Omegas Group*, 16 F.3d at 1452 ("The equities of bankruptcy are not the equities of the common law. Constructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, not from the offending debt-

or"); *Oxford Organisation v. Peterson (In re Stotler and Co.)*, 144 B.R. 385, 388 (N.D.Ill. 1992) (Aspen, J.) ("a constructive trust is fundamentally at odds with the general goals of the Bankruptcy Code"). *North American Coin & Currency*, 767 F.2d at 1575 (courts "necessarily act very cautiously in exercising such a relatively undefined equitable power in favor of one group of potential creditors at the expense of other creditors, for ratable distribution is one of the strongest policies behind the bankruptcy laws").

Skadden, however, has contended that its claim is distinguishable from the claims of the other unsecured creditors, including those defrauded by the Debtor's Ponzi scheme. And Professor Sherwin has suggested that a bankruptcy court might, under limited circumstances, impose a constructive trust to avoid unjustly enriching the creditors. "The decision to grant or deny a constructive trust is [really] a decision about priority, which requires a judgment about the relative strength of [competing] claims on assets." Sherwin at 313. The focus of any such inquiry, therefore, cannot be on the Debtor's wrongdoing, but on the relative equities of the claims of the trust claimant and the other creditors. In this Court's view, if any such inquiry is authorized. at all, it is under § 510(c) of the bankruptcy code, which permits subordination of claims "under principles of equitable subordination." *Cf. FCX*, 60 B.R. at 409–10. Applying either constructive trust or equitable subordination principles, however, Skadden is not to entitled to the relief it seeks.

Skadden asserts that its claim is different because the Debtor's fraud or wrongdoing with respect to the sale proceeds was separate and distinct from the Debtor's Ponzi scheme. Skadden maintains that it is an involuntary creditor of the Debtor because it did not choose to do business with the Debtor. These arguments are not persuasive. First, Skadden never had possession of, or any other interest in, the New York property or the sale proceeds. Moreover, Skadden still has a remedy against its own client, Mrs. McGrath. Indeed, its claim is secured by other properties. Mr. Foos' other victims, however, were deprived of their own funds

and most will have no other source of restitution. In addition, it is not quite correct that Skadden, unlike the other creditors, did not put its trust in the Debtor. It failed to take a lien in this property and accepted his representations that the property had not been sold, not learning of the sale until after the November 1993 bankruptcy, although the property, in fact, had been sold that February. Perhaps the problem is that Skadden had itself as a client. But that is not a reason to apply an equitable remedy to deprive other creditors of their share of these funds. Those creditors may have been unwise, but they did nothing so wrong as could be characterized as inequitable conduct. They are not unjustly enriched at the expense of Skadden.

Although Skadden is not entitled to priority over other creditors, it does have a remedy against Mr. Foos. Skadden can seek to have its claim declared non-dischargeable under 11 U.S.C. § 523(a).[10] *See Omegas Group*, 16 F.3d at 1451. If Skadden were successful, the miscreant would bear the burden of satisfying that debt out of post-bankruptcy assets. Other unsecured creditors would not be prejudiced because post-bankruptcy assets are generally not property of the estate to which they can look for distribution on their claims; rather, the other unsecured creditors and Skadden would share in the pre-bankruptcy assets that became property of the estate, including the funds here in dispute. That is the result mandated by the bankruptcy code.

For the reasons set forth above, the Court concludes that Skadden has no "interest relating to the subject matter of" this interpleader action and its motion to intervene as of right will be denied.

### C. Permissive Intervention

In the alternative, Skadden has moved for permissive intervention pursuant to FED.R.CIV.P. 24(b) as incorporated into FED.R.BANKR.P. 7024. "Permissive intervention is wholly discretionary with the district [or bankruptcy] court...." *Keith*, 764 F.2d at 1272; *36.96 Acres of Land*, 754 F.2d at 860. The Court may allow anyone who timely applies to intervene when the "applicant's claim or defense and the main action have a question of law or fact in common." FED.R.CIV.P. 24(b)(2); *see also Wade v. Goldschmidt*, 673 F.2d 182, 187 (7th Cir. 1982). The Court must consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." FED.R.CIV.P. 24(b); *see also Southmark*, 950 F.2d at 419.

Skadden asserts that, as the beneficiary of a constructive trust, it has an equitable interest in the funds, which therefore presents a question of law or fact in common with the interpleader action. However, Skadden's assertion is premised on the notion that it does have an interest in the funds. The Court has already held that it does not, even assuming it could establish grounds under state law for the imposition of a constructive trust. Without an interest in the subject funds, Skadden does not have a claim that presents a question of law or fact in common with the underlying interpleader action.

Accordingly, the Court declines to exercise its discretion to permit intervention and will deny Skadden's alternative motion for permissive intervention.

### VII. CONCLUSION

Like all of the Debtor's victims and other creditors, Skadden hopes to be paid. But the frequent problem in bankruptcy cases is that there is not enough money to pay every claim in full. For that reason, "[j]ust as medieval alchemists bent all their energies to discovering a formula that would transmute

---

10. Section 523(a) provides in pertinent part:
   (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
    * * * * * *
   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

    (A) false pretenses, a false representation, or actual fraud ...;

    * * * * * *

    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.
   11 U.S.C. § 523.

dross into gold, so too do modern creditors' lawyers spend prodigious amounts of time and effort seeking to convert their clients' general, unsecured claims against a bankrupt debtor into something more substantial." *Haber Oil*, 12 F.3d at 431. Of course, when a debtor is insolvent, successful alchemy would be at the expense of other creditors, not the debtor. It is therefore necessary to examine claims to priority treatment with special care.

Skadden's claim to priority treatment is that it had an equitable interest in the funds at issue in this interpleader proceeding under a constructive trust theory. But constructive trust is a remedy, not a property right. Therefore, when this bankruptcy case was commenced Skadden did not have an interest in those funds beyond that of every other unsecured creditor's interest in the estate. Moreover, neither the bankruptcy code nor the equities of the case permit the imposition of a constructive trust post-bankruptcy.

For these reasons, an order will be entered denying Skadden's motion.